[S. F. No. 9677. In Bank.—January 24, 1921.]

## WILLIAM D. STEPHENS et al., Petitioners, v. FRIEND WM. RICHARDSON, as State Treasurer, et al., Respondents.

**[1]** BONDS — INVESTMENT OF SURPLUS MONEY IN STATE TREASURY —CONDITION PRECEDENT TO POWER OF STATE BOARD OF CONTROL.— Under the act of 1913 (Stats. 1913, p. 563) authorizing the state board of control to use any surplus moneys in the state treasury for the purchase of bonds of the state, such board cannot buy bonds until after it and the state treasurer have met and determined that there is "surplus money" which is available in payment of bonds so purchased.

**[2]** ID.—SALE OF BONDS—TIME OF PAYMENT—CONSTRUCTION OF ACT.— The provisions of section 2 of the act of 1913 providing the method

CLXXXIV Cal.—46

of determining what funds shall constitute surplus funds within the meaning of the act, and the provisions of section 4 of the act of 1915 (Stats. 1915, p. 652), authorizing the sale of highway bonds for cash, show clearly that it was not contemplated that there should be an executory agreement for the sale of such bonds on the condition that payment should be made at some time in the future when surplus money should be available, or at such time as might be convenient to the purchaser.

[3] Id.—Exercise of Powers—Status of State Officers.—The officers of the state, in exercising the power of sale and purchase conferred by the acts of 1913 and 1915, are agents exercising a special power over property of the state, and they have no power except that which is expressly given by the statute, or is necessarily implied from the express provisions.

[4] Id.—Bid of State Board of Control for Highway Bonds—Payment at Future Time—Void Sale.—A bid by the state board of control for state highway bonds and the acceptance of such bid by the state treasurer did not constitute a sale thereof within the meaning of section 3 of article XVI of the constitution, providing for the destruction of unsold bonds, where the sale was made on credit and payment was to be made at a time in the future when surplus money should be duly declared to be available for their purchase.

APPLICATION for a Writ of Mandamus requiring the State Treasurer to cancel unsold highway bonds. Writ granted.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, for Petitioners.

George D. Squires for Respondents.

WILBUR, J.—Petitioners pray for writ of mandate directed to the state treasurer requiring him to cancel certain bonds of the state of California prepared by him pursuant to the provisions of section 2 of article XVI of the constitution of the state of California, which authorized the issuance and sale of forty thousand bonds of one thousand dollars each. Petitioners' prayer is based upon the amendment to the constitution adopted by the people of the state at the election November 2, 1920, wherein a new section, *number 3*, was added to article XVI of the constitution, which provided, among other things, as follows: "Sec. 3. . . . All of

said forty thousand bonds which shall remain unsold at the time of the adoption of this section shall be cancelled and destroyed by the state treasurer, and in lieu thereof bonds in the same amount shall be prepared and sold as hereinafter stated." The respondent treasurer contends that the bonds in question have been sold and for that reason declines to cancel the same. Respondent's contention is based upon the fact that at the time when twelve thousand of these bonds were offered for sale to the highest bidder for cash, in accordance with law, on February 26, 1920, the state board of control, acting under and by virtue of the authority vested in them by the legislature of the state (Stats. 1913, p. 563), bid for said twelve thousand bonds par, and that subsequent to that bid from time to time bonds have been issued and delivered to the state board of control in pursuance of said bid. The question here relates solely to the portion of such twelve thousand bonds as remain undelivered in the custody of the treasurer and for which no payment has been made. The question, then, resolves itself into this proposition: Did the making of the bid by the state board of control for the twelve thousand bonds and the acceptance of said bid by the state treasurer constitute a sale thereof within the meaning of the constitutional amendment?

By the statute of 1913 (Stats. 1913, p. 563), the state board of control were authorized to use any surplus moneys in the state treasury for the purchase of bonds of this state. The statute provides (section 2) the method of determining what funds shall constitute surplus funds within the meaning of the act and that "thereupon the state board of control shall proceed to invest the same in the purchase of bonds of any of the classes described in section one of this act." It is further provided in section 3 as follows: "Any bonds purchased or held under the provisions of this act may be sold or exchanged for other bonds of any of the classes described in section one of this act, and the money received from any such sale may be reinvested by the state board of control in the purchase of any such bonds; provided, that no such sale or exchange shall be made at a price which will result in a net loss to the state."

[1] The state board of control cannot buy bonds for the state at all until after it and the state treasurer have met and determined that there is "surplus money" which is avail-

able in payment of bonds so purchased (section 2, *supra*). This is a condition precedent to the power of the state board of control to make either a purchase or a contract of purchase of any bonds with public money. In the record before us there is no statement or intimation that any such meeting had been held or determination made or that there was any "surplus money" on hand at the time of the supposed purchase by the state board of control from the state treasurer, or any money available, either then or afterward, to pay for these bonds claimed to have been purchased and now remaining undelivered. Furthermore, under section 4 of the act of 1915 authorizing the sale of the highway bonds (Stats. 1915, p. 652), such sale must be made for cash and immediately thereafter the treasurer must pay the same into the state treasury. [2] These provisions show clearly that it was not contemplated that there should be an executory agreement for the sale of the bonds on the condition that payment should be made at some time in the future when "surplus money" should be available, or at such time as might be convenient for the purchaser. The so-called sale and acceptance by the treasurer were made in February, 1920. Up to the time of the passing of the constitutional amendment on November 2, 1920, there had been no payment of cash and no delivery of these bonds in controversy in pursuance of said supposed sale. From the facts stated in the record and advanced at the hearing, no other conclusion can be drawn than that the alleged sale was made on credit and that payment was to be made at a time in the future when "surplus money" should be duly declared to be available for their purchase.

[3] The officers of the state, in exercising the power of sale and purchase conferred by these statutes, are agents exercising a special power over property of the state. Such agents have no power except that which is expressly given by the statute, or is necessarily implied from the express provisions. The provisions of the statutes do not either expressly or by implication allow a sale to be made upon such terms as those which are here shown, or at a time when there is no "surplus money" with which to pay for the same, and by requiring the sale to be for cash, in effect prohibit a sale to either the state board of control or to private bidders on credit.

[4]  It necessarily follows that the contract of sale at-
tempted to be made in this manner is utterly void as to the
bonds still unpaid for and undelivered for the want of power
upon the part of either party to make such contract.

A bid for bonds by the state board of control, even if ac-
cepted by the state treasurer, where there are no funds im-
mediately available for transfer in payment therefor, and
where no such transfer is then or subsequently made of such
funds, is not a sale of such bonds within the meaning of the
constitutional amendment of 1920, which requires the destruc-
tion of unsold bonds. (*Christensen* v. *Cram,* 156 Cal. 633,
635, [105 Pac. 950].) The purpose of the constitutional amend-
ment was to permit an increase of interest in accordance with
the market rate so that bonds would be salable at par.  In
the argument for the adoption of the constitutional amend-
ment mailed to each voter it was said: ''State highway bonds
are now unsalable as the law will not permit their being sold
at less than par.  No state bond bearing but four and one-
half per cent interest can hope to compete with the United
States bonds now purchasable to yield 7 per cent, nor with
the many excellent industrial bonds which are selling to yield
eight per cent or more. . . . Like other commodities, money
must be paid for when needed at the going market rate.  Its
value cannot be fixed by state legislation and the proposed
plan appears to be well within the scope of sound business.''
In the argument against the proposed constitutional amend-
ment mailed to all the voters of the state it was said: ''This
measure should be emphatically rejected and defeated.  The
foremost intent of the proposed amendment is to authorize an
increase in the interest rate on about thirty-seven mil-
lion dollars' worth of unsold bonds of the third highway
issue, from 4½ per cent to a maximum of 6 per cent.''  The
thirty-seven million dollars includes all of the twelve thousand
bonds not heretofore transferred and delivered to the state
board of control.  The argument in favor of the constitutional
amendment would also point to the conclusion that the bonds
yet undelivered by the state treasurer to the state board of
control should not be so delivered, for the reason that if
delivered they could not be sold as the law requires, namely,
at a sum ·which will not net a loss to the state. (Stats. 1913,
p. 563.) It is clear that the constitutional amendment con-
templated the destruction of the bonds in question as ''un-

sold" bonds and that when so construed the amendment does not impair the obligation of any valid outstanding contract of sale.

Let the writ issue.

Shaw, J., Sloane, J., Olney, J., Lennon, J., and Lawlor, J., concurred.

ANGELLOTTI, C. J., Concurring.—I concur in the judgment on the last ground stated in the opinion.