### MITCHELL v. STEPHENS et al.

(District Court, S. D. California, S. D.          December 27, 1922.)

No. F–97.

1. **States** ☞168½—**Taxpayer cannot maintain suit to enforce claim on behalf of state.**

    A taxpayer of a state cannot maintain a suit in equity to enforce a claim or demand inuring to the state itself.

2. **States** ☞168½—**Taxpayer cannot maintain suit to which state is indispensable party.**

    Under the rule that in a suit by a stockholder to enforce a right of the corporation, or by a taxpayer to enforce a right of a municipality the corporation or the municipality is an indispensable party such a suit cannot be maintained to enforce a right or claim inuring to a sovereign state which cannot be made a party without its consent.

3. **Courts** ☞307(1)—**Federal court held without jurisdiction of suit.**

    A federal court is without jurisdiction on the ground of diversity of citizenship of a suit by a nonresident taxpayer against citizens of the state to enforce a claim inuring to the state, to which suit the state is an indispensable party and if consenting to become a party must be aligned with complainant.

In Equity. Suit by S. H. Mitchell against William D. Stephens and others. On motions by defendants to dismiss bill. Motions granted.

Morfoot & McCroskey and John W. Hart, all of Los Angeles, Cal., for plaintiff.

U. S. Webb, Atty. Gen. of California, and Robt. W. Harrison and John W. Maltman, Deputy Attys. Gen., for defendants Stephens and others.

Lilienthal, McKinstry & Raymond of San Francisco, Cal., for Anglo & London-Paris Nat. Bank.

Joe Crider, Jr., of Los Angeles, Cal., for Ætna Casualty & Surety Co! and others.

BLEDSOE, District Judge. In 1919, the state of California by constitutional amendment issued $40,000,000 in bonds for the construction of state highways. Article 16, § 2, Cal. Const.; Stats. 1921, p. lxi. It was appropriately provided in said amendment that said bonds should bear interest at the rate of 4½ per cent. per annum and that when sold no bid should be accepted "less than the par value of

the bond plus the interest which has accrued thereon between the date of sale and the last preceding interest maturity date." Early in 1920, pursuant to an effort to complete the highway system of the state and precedent thereto to make sale of appropriate bonds, it was ascertained, apparently, by those authorized to act for the state, that at that time the bonds, bearing interest at the rate of 4½ per cent., could not be sold at par under existing market conditions. Acting presumably in entire good faith in the premises, but with a sincere desire to effect a sale of sufficient bonds to conclude existing or immediately contemplated highway work, $3,000,000 worth of said bonds were purchased at par by the state board of control, an agency of the state authorized to invest its funds, and immediately thereafter resold at the then prevailing market price to the Anglo & London-Paris National Bank of San Francisco, one of the defendants above named. This sale entailed a net loss to the state of $222,160.50. This net loss to the state thus occasioned, occurring in the highway fund thereof, was met and offset by a transfer of the like amount to that fund from another fund in the custody of the state treasurer, consisting of moneys paid to the state of California by the government of the United States under the United States Federal Aid Road Act of 1916 (Comp. St. §§ 7477a–7477i). In other words, moneys coming from the government of the United States and constituting federal aid in the construction of rural roads, etc., were diverted from the general or some other special fund of the state to the state highway fund in order to offset the loss occasioned by the sale of the bonds above mentioned at market value instead of par value as provided by law.

The plaintiff above named is a citizen and resident of the state of Arizona and "a property owner in and a taxpayer to the state of California and also the owner and holder of shares of stock in the Farmers' Bank of Imperial, which is a banking corporation, duly organized and existing under and by virtue of the laws of the state of California, and said bank is a resident of said state of California and conducting herein a general banking business, and pays taxes directly to said state." He now brings suit in this court in equity against William D. Stephens, the Governor, and certain other officers of the state, their bondsmen as such, and the bank above named, the purchaser of the bonds hereinabove referred to, alleging somewhat in detail the facts hereinabove adverted to and particularly the net loss suffered by the state in the amount hereinabove specified; that the appropriate officers of the state whose duty it is to institute and prosecute all claims, demands, or suits for the recovery of money into the state treasury in spite of written demand in that particular behalf, "failed, neglected and refused to commence any action to obtain an accounting and payment to the said state of California of said sum or any part thereof by these defendants, or any of them." "Wherefore plaintiff prays that a judgment be rendered against defendants and each of them, jointly and severally, directing them to account for and pay into the treasury of the state of California, for the use and benefit of and to the credit of the proper highway funds of said state, the sum of $222,160.50, together with interest thereon

at the rate of 7 per cent. per annum from the 1st day of March, 1920, and that they pay to the plaintiff herein his costs incurred," etc.

It is a further fact of materiality that the people of the state of California, on November 2, 1920, long after the transaction involved herein had been consummated, adopted an amendment to the Constitution (article 16, § 3) providing substantially for the issuance from time to time of new bonds in lieu of bonds provided for in the act of 1919 (Const. art. 16, § 2), to bear interest "according to the then prevailing market conditions but shall at no time exceed 6 per cent. per annum," etc., and also that all of the bonds of the $40,000,000 issue hereinabove referred to, "which shall have heretofore been sold, shall be and constitute valid obligations of this state." It stands as conceded, in view of the holdings of the Supreme Court of the state of California in Ellis v. Stephens, 185 Cal. 720, 198 Pac. 403, and Stephens v. Richardson, 184 Cal. 721, 195 Pac. 651, that the sale of the bonds hereinabove described under the circumstances entailed therein, was ultra vires and void. It is equally clear, however, from the language of the amendment to the Constitution adopted in 1920, that such bonds as were actually so sold should be and remain "valid obligations" of the state.

[1] Several motions to dismiss the bill of complaint have been filed by the respective defendants. The questions raised therein are substantially that the bill of complaint does not state facts sufficient to constitute a valid cause of action, in equity, against any of the defendants; that this court has no jurisdiction of the subject-matter, etc. The points chiefly relied upon, and which, in my judgment, are determinative of the controversy, relate to the fact that the suit here, in reality, is a suit brought in behalf of the state of California to collect through an accounting in equity, a sum of money due and owing to the state as for the malfeasance of its officers or as for money had and received by the bank and in good conscience owing to the state, because of the bank's purchase from the state with full knowledge at less than par, of bonds which under the law might not be sold for less than par. Many authorities are cited to the effect that a member of a private or even public corporation may as a member or stockholder thereof bring suit in equity to enforce a right inuring to the benefit of such corporation when the corporation itself fails or has failed to assert the claim or demand accruing to it. With these cases, upon the facts therein stated and in keeping with the principles therein announced, there can be, in my judgment, no quarrel. None of them have to do, however, with the asserted right of a taxpayer of a state, as contradistinguished from a taxpayer of a city or county, to bring a suit in attempted and asserted enforcement of a claim or demand inuring to the state itself, and I am persuaded that both upon principle and authority, such a suit in behalf of a sovereign state may not lie. The reason for such conclusion is appropriately stated in the decision of the Court of Appeals of Maryland in Schneider v. Yellott, 124 Md. 92, 91 Atl. 779, 781. In that case the suit was brought by a taxpayer of the state of Maryland "for money payable by the defendant to the state of Maryland, * * *

for money had and received by the defendant, for the use of the state of Maryland, * * * for money received by the defendant" as treasurer of Baltimore county and "appropriated to his own use," he being required by the Constitution of the state of Maryland to account for the same to the state of Maryland. In considering the phase of the question adverted to hereinabove, the court used the following persuasive language:

"The Legislature has large powers in reference to settlements and collections of claims due the state. It would be a reflection on those officers of the state of Maryland to permit private parties to come into court and undertake to perform their duties; certainly unless there was some ground shown for such action. There could therefore not be the reason even in courts of equity for permitting taxpayers to interpose in matters in which the state is interested that there may be in cases of municipalities. The theory on which courts of equity have acted in cases against municipalities is very similar to that which has caused them to give relief to stockholders in private corporations. If the action of either directors or stockholders is ultra vires, fraudulent, or illegal, courts of equity may give relief to a stockholder on the ground that the directors or majority of stockholders were parties to such unlawful action, or that the circumstances are such that it was apparent that they would not do their duty to the minority. So it may be with the governing boards or officers of cities, towns, or counties, if they are guilty of such conduct—especially if for their own benefit—and courts of equity may give taxpayers relief, to prevent the consummation of ultra vires, fraudulent or illegal acts, or it may be under some circumstances to recover funds misappropriated or illegally retained. In such a case it would be proper, and certainly in most, if not all, cases necessary to make the corporation, public or private, a party to the bill, and that of itself is sufficient to suggest the impropriety of private parties proceeding where the state is concerned, as of course the state cannot be sued without its consent. The Legislature could give its consent to such suit, but it would be simpler and more effective for it to appoint special attorneys to collect, adjust, or settle such claims, if there was any necessity for such action. But there can be no possible reason why the officers of the state, in whom such powers are vested in reference to such matters as are above referred to, should be interfered with. They are fully capable of taking care of the state's interests, and it is not suggested that they have, in any way, been parties to or profited by the appellee's failure to return the excess, if there was any. It would require even a court of equity to go much further than that court has yet gone in this state, or elsewhere, so far as brought to our notice, if taxpayers be permitted to sue for the recovery of such funds as are now under consideration. There is still more reason why such an action at law as this cannot be maintained."

Suffice it to say that the Legislature of the state of California was in session after the sale of the bonds in question, after the ratification by the people of the state of the bonds actually sold and previous to the filing of the bill of complaint herein. In no wise did it act with reference to this demand or the indebtedness alleged to be owing to the state, and its declination to act must, in my judgment, be for the time being at least, construed to be positive and controlling determination on the part of the state, acting in its sovereign capacity, to decline to assert a remedy against these defendants, or any of them, for an alleged violation of the law or the purchase with knowledge of the bonds at a price less than that authorized by law.

While this suit is brought by a taxpayer of the state of California, it is obvious that he himself is entitled to no part of the money sought to be recovered. Even if he were, nothing detailed in the complaint

would authorize or justify the court in apportioning to him any microscopic part of the amount actually involved, and which could be said is his, in virtue of his interest in the financial affairs of the state. The suit, though brought in his name, is brought in order that a recovery may be had by the state, and, as hereinabove indicated, the prayer of the bill itself asks that the money due from the various defendants be paid "into the treasury of the state of California, for the use and benefit of and to the credit of the proper highway funds of said state." The state, therefore, is the real party in interest.

[2] Assuming, in derogation of the decision of the Court of Appeals of Maryland, that a taxpayer of a state may sue, in the form herein undertaken, to recover money asserted to be due to the state, the state itself would be a necessary and indispensable party. The Supreme Court of the United States in Davenport v. Dows, 18 Wall. 626, 21 L. Ed. 938, held that a court of equity will not take cognizance of a bill brought to settle a question in which the corporation is the essential party in interest unless such corporation is made a party to the litigation. So, also, in Porter v. Sabin, 149 U. S. 473, 13 Sup. Ct. 1008, 37 L. Ed. 815, the same distinguished tribunal held that the corporation, in a suit brought by a stockholder against the officers of the corporation for fraudulent misappropriation, is itself a necessary party, in order that it may be bound by the judgment. If the state of California has a valid claim against these defendants, that claim ought to be settled, for all time, in a manner concluding the state itself by any judgment to be rendered in litigation of the character here under consideration. So, also, in Land Log & Lumber Co. v. McIntyre, 100 Wis. 245, 75 N. W. 964, 968, 69 Am. St. Rep. 915, the Supreme Court of Wisconsin, in a case brought to compel the payment into the county treasury of certain money alleged to have been unlawfully received by certain of the defendants therein, held that while, under the cases and principles relied upon by plaintiff herein, a member of such a corporation might bring a suit in its behalf, in equity, to enforce a payment due to it, yet "he must proceed, in equity or not at all, *joining the corporation as a party* in the capacity of trustee for all its members."

[3] The state being a necessary and indispensable party herein, no authority being shown to sue the state of California at the behest of citizens of Arizona and the presence of the state, if it should be aligned here as plaintiff, being destructive of the requisite diversity of citizenship necessary to give the federal court jurisdiction, it must follow that the motions to dismiss interposed herein are well taken and should be granted.

It is so ordered.