# FREDERICK J. SCHNEIDER

## *vs.*

# GEORGE W. YELLOTT.

*Money had and received: action for —; only by the party with
legal title. State: money due to the —; no suit
for, by individual.*

Only one having the legal title to the money, in whose favor
the law raises a presumption to pay, may maintain an action
for money had and received, the fact that the money belongs·
to the plaintiff being the theory on which such an action rests.
p. 94

In a suit by a resident and taxpayer against a public official
for moneys due the State, a count for money had and received
by the defendant for the use of the State can not be sustained.
pp. 93-94

A suit at law, upon the bond of a County Treasurer, can not
be maintained by a taxpayer, as such, for the use of the State,
for fees claimed to have been received and appropriated by the
Treasurer, in excess of his compensation as fixed by the Consti-
tution.                                     pp. 94, 95

*Decided June 26th, 1914.*

Appeal from the Circuit Court for Baltimore County.
(BURKE, C. J.)

The facts are stated in the opinion of the Court.

The cause was submitted to BOYD, C. J., BRISCOE,
THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*John Holt Richardson* and *George Washington Williams,.* filed a brief for the appellent.

*John I. Yellott* submitted the case on the record for the appellee.

BOYD, C. J., delivered the opinion of the Court.

A demurrer to the *narr.,* filed in this case was sustained,. and, the plaintiff having declined to amend, judgment for the defendant for costs was entered. From that judgment this appeal was taken by the appellant, the plaintiff below.. The *narr.* is as follows:

"Frederick J. Schneider, a resident and taxpayer of Baltimore County, and State of Maryland, for more than twenty-five years past, for the use of the State of Maryland, sues George W. Yellott for money payable by the defendant to the State of Maryland:

"1.  For money had and received by the defendant, for the use of the State of Maryland;

"2.  And for that the defendant, George W. Yellott, was duly elected and qualified as Treasurer of Baltimore County, for the terms from December 1, 1889, to November 30, 1891, and from December 1, 1895, to November 30, 1897, an office created by and existing under the Constitution and laws of the State of Maryland, and that as such Treasurer he received into his hands and appropriated to his own use divers sums of money arising from fees and other emoluments of said office, and failed and neglected to account for the same to the State of Maryland, as required by the Constitution of the State of Maryland;

"And the plaintiff claims $30,000.00."

·We do not understand upon what principle the first count could be sustained. The form of the count in the Code is, "Money received by the defendant *for the use of the plaintiff,"* while the count in the *narr.,* is, "For money had and

received by the defendant *for the use of the State of Maryland,"* and both counts of the *narr.* are preceded by the statement "for money payable by the defendant to the State of Maryland." In speaking of persons entitled to sue for money had and received, the general principle is thus stated in 27 *Cyc.* 868: "It is only one having the legal title to the money in whose favor the law raises a promise to pay, and who may maintain an action for money had and received; the fact that the money belongs to plaintiff is the theory on which such action is maintainable." The demurrer was to the whole *narr.,* and not to each count, and as it is clear that the plaintiff could not recover on the first count, we will consider the second, which is a special one, setting out more particularly the plaintiff's alleged cause of action.

We will not stop to determine whether the second count is technically defective in presenting the appellant's contention, as we understand what that is from the oral argument and the brief of his attorney. He contends that the appellee as treasurer of Baltimore County was subject to the provisions of section 1 of Article 15 of the Constitution, and was consequently required to pay over to the State Treasurer all sums of money received by him from fees and other emoluments in excess of $3,000 and the expenses of his office. As we gather from the argument, the appellant intended by his *narr.,* to allege that the appellee had received such excess, but had not paid it over, although strictly speaking it might only mean that the appellee failed and neglected to file his account with the Comptroller, as required by that section of the Constitution, whether there was any excess or not. But assuming that it means that the appellee did receive such excess, and did not pay it over, the principal question to be determined is, whether the plaintiff as a taxpayer has the right to maintain an action at law for such excess, for the use of the State of Maryland.

It cannot be contended that there is any precedent in this State to support such an action. The appellant has cited

such cases as *Holland* v. *Baltimore,* 11 Md. 186; *Baltimore*
v. *Gill,* 31 Md. 375; *Baltimore* v. *Keyser,* 72 Md. 106;
*Packard* v. *Hays,* 94 Md. 233, as well as some others in
this State and quite a number from elsewhere, but regardless
of the dissimilarity between those cases and this one in other
respects, every one of those in this State cited by him was
in equity, as were all of those cited from out of the State,
unless perhaps in a few instances where they were brought
under the Code system, or under some special statute.   Of
course, it does not necessarily follow that because there is
no precedent for a suit, it can not be maintained, but the
total lack of precedents in suits at law and the fact that all
cases in which the subject-matter was even in a remote
degree analagous to that under consideration were brought
in equity would at least be very suggestive of a concurrence
of opinion on the part of the bar that an action at law would
not lie.   Many reasons might be suggested why such an one
as this would not be, and could not be, permitted under our
system.   In the first place the plaintiff has no more right
to sue than any other taxpayer in the State of Maryland—
resident or non-resident, corporate or individual.   Hence,
if the appellee owes the State of Maryland and the plaintiff
can sue in his own name for the use of the State, every other
taxpayer can do so, and instead of there being one, there
might be many such suits against a public officer, even if
eventually he could show there was no merit in them.   Such
suits might be instituted for the purpose of discrediting the
defendant as a candidate for some office at an election to be
held by the people, on account of some personal animosity to
him, or for other equally unmeritorious cause.

Again, if a taxpayer has a right to sue he has the right to
control his suit.   One might docket a case and then continue
it as long as he and the defendant saw proper, unless it could
be disposed of under some rule or practice of the Court.   He
might sue for the purpose of inducing the representatives of
the State not to sue until his case was determined.   But if

he could get judgment, who would collect it, who would enter it satisfied, if it were paid? Is the taxpayer, or the taxpayer's attorney to be permitted to collect the State's money? If so, the State would have no security for it, other than the personal liability of the one collecting it. The State's Attorney, State Treasurer, Comptroller and other officers handling the State's funds are required to give bond, but if the theory of the appellant be correct that might be rendered useless in such cases by having a taxpayer institute the suit.

The bond of an officer owing the State money under these provisions of the Constitution is liable, *Vansant* v. *State,* 96 Md. 110, but can it be possible that a taxpayer can, as such, institute and prosecute a suit on the bond? If suit is brought on the bond, it must be in the name of the State, as it is given to the State. If every taxpayer in the State had the right to sue the bond, regardless of his motive in suing, it would probably materially increase the cost of bonds, if corporate security be given, and cause individuals to hestitate to go on them. But it can not be contended that a taxpayer would have the right to use the name of the State and sue on the bond, and yet the officer owing the State might be financially worthless.

But if he cannot sue on the bond, how can he sue the officer in assumpsit? The rule of law in such an action is that the money is due the plaintiff. When a suit is brought by A to the use of B, it is because there is something claimed to be due, or which was due, A by the defendant. If A transfers a debt due him to B, B can sue in A's name for use of B, or if assigned as required by the statute, he can sue in his own name, but in this case there was nothing due the appellant by the appellee, and yet he sued in his own name for the use of the State. A stockholder of a private corporation could as well sue at law in his own name to recover a debt due the corporation, and for his right to sue rely on the fact that he had entered the case to the use of the corporation. The debtor could undoubtedly defeat such an action on the ground

that he never owed the legal plaintiff. There is nothing expressly or impliedly due the appellant by the appellee, so far as this *narr.,* discloses, and if the appellant could sue on the theory that he as taxpayer had sustained some loss, and he sued for that, as the money is due the State every taxpayer in the State would likewise be entitled to his portion. That would not only require an accounting which would be tedious and expensive, but unless the amount due was a very large sum and the plaintiff an exceedingly large taxpayer, the Circuit Court would not have jurisdiction, as the portion he would be entitled to would in all probability, not to say certainly, be less than the amount required to give that Court jurisdiction.

Other reasons might be given to show why it would not be wise or desirable to permit such suits to be brought, but regardless of any question of expediency or inconvenience, we need only determine in this case whether the allegations of the *narr.,* show any right in the plaintiff for which he can sue. That they do not, can admit of no question, as the simple but decisive answer is, that they show no right in the plaintiff to the funds in question, and he has no authority to collect them for the use of the State or for any other purpose. The section of the Constitution relied on by the appellant in terms provides that "such officer shall be subject to suit *by the State* for the amount that ought to be paid into the treasury." Section 2 of Article 6 of the Constitution provides that the Comptroller shall "superintend and enforce the prompt collection of all taxes and revenue; adjust and settle, on terms prescribed by law, with delinquent collectors and receivers of taxes and State revenue." By Section 37 of Article 19 of the Code the Comptroller is authorized and empowered to adjust and settle the claims of the State against collectors or receivers of public money and their sureties, and against corporations and individuals who may be indebted to the State, in all cases where said claims accrued prior to and includng the year 1910 (as amended by Chapter

574 of Laws of 1912), on the terms therein named, and by subsequent sections of that article of the Code he is authorized to employ an attorney or attorneys in settlement of such claims.    Section 12 of Article 5 of the Constitution provides that "The State's Attorney in each county, and the City of Baltimore, shall have authority to collect, and give receipt, in the name of the State, for such sums of money as may be collected by him, and forthwith make return of and pay over the same to the proper accounting officer."    Amongst other duties of the Attorney General section 3 of Article 5, provides that "he shall aid any State's Attorney in prosecuting any suit or action brought by the State in any Court of this State, and he shall commence and prosecute or defend any suit or action in any of said Courts, on the part of the State, which the General Assembly, or the Governor, acting according to law, shall direct to be commenced, prosecuted or defended."    Section 9 of Article 2 provides that the Governor "shall take care that the laws are faithfully executed," and by section 1 of Article 15, he is authorized to declare the office vacant if any officer subject to its provisions fails to comply with them for the period of 30 days after the expiration of each and every year of his term.    The legislature has large powers in reference to settlements and collections of claims due the State.    It would be a reflection on these officers of the State of Maryland to permit private parties to come into Court and undertake to perform these duties—certainly unless there was some ground shown for such action.

There could, therefore, not be the reason even in Courts of Equity for permitting taxpayers to interpose in matters in which the State is interested that there may be in cases of municipalities.    The theory on which Courts of Equity have acted in cases against municipalities is very similar to that which has caused them to give relief to stockholders in private corporations.    If the action of either directors or stockholders is *ultra vires,* fraudulent or illegal, Courts of Equity may give relief to a stockholder on the ground that the directors

or majority of stockholders were parties to such unlawful action, or that the circumstances are such that it was apparent that they would not do their duty to the minority. So it may be with the governing boards or officers of cities, towns or counties, if they are guilty of such conduct—especially if for their own benefit—and Courts of Equity may give taxpayers relief, to prevent the consummation of *ultra vires,* fraudulent or illegal acts, or it may be under some circumstances to recover funds misappropriated or illegally retained. In such a case it would be proper, and certainly in most, if not all, cases necessary to make the corporation, public or private, a party to the bill, and that of itself is sufficient to suggest the impropriety of private parties proceeding, where the State is concerned, as of course the State can not be sued without its consent. The legislature could give its consent to such suit, but it would be simpler and more effective for it to appoint special attorneys to collect, adjust or settle such claims, if there was any necessity for such action.

But there can be no possible reason why the officers of the State, in whom such powers are vested in reference to such matters as are above referred to, should be interfered with. They are fully capable of taking care of the State's interests, and it is not suggested that they have, in any way been parties to or profited by the appellee's failure to return the excess, if there was any. It would require even a Court of Equity to go much further than that Court has yet gone in this State, or elsewhere, so far as brought to our notice, if taxpayers be permitted to sue for the recovery of such funds as are now under consideration. There is still more reason why such an action at law as this can not be maintained.

We have not thought it necessary to pass on the question argued by the appellant—whether an Act of the Assembly passed in 1914, attempting to release the appellee and others from the claims of the State is valid—as we are satisfied that

the plaintiff has no standing in Court to sue, regardless of that Act, and we have not been furnished with a copy of it, but the objection to the validity of the Act urged in argument only shows how much safer it is to leave such matters in charge of those to whom the Constitution and laws of the State give control over them, rather than permit others to interfere. If the Governor approved the Act spoken of, it would be extremely technical to hold that it was invalid merely because it did not appear on the face of it either that the release was recommended by the Governor or officers of the Treasury Department, or that such recommendation should be obtained before the release would take effect. The Constitution does not require the fact of the recommendation to appear on the face of the Act, and if it be permissible to provide (as is indicated in *Montague* v. *State,* 54 Md. 489) that such a recommendation be obtained before the release shall take effect, if the Governor approves the Act, it would be a useless proceeding for him to then sign a recommendation. His approval of the Act ought to be enough.

In order that there be no misapprehension as to that, we will add that in referring above to motives that might influence taxpayers, we did not intend to apply what is said to the appellant, and of course not to his attorney. We have no knowledge of their motives and have nothing to do with them in this case, but we said what we did to show what might be the result if any taxpayer could prosecute such a suit. The judgment will be affirmed.

> *Judgment affirmed, the appellant to pay the costs.*