182 So. 758

**POWERS v. UNITED STATES FIDELITY & GUARANTY CO. et al.**

**6 Div. 322.**

Supreme Court of Alabama.

June 30, 1938.

Conrad Jarrell, of Birmingham, for appellant.

390

Coleman, Spain, Stewart & Davies, of Birmingham, and Chas. R. Wiggins, of Jasper, for appellee.

FOSTER, Justice.

This is a suit in equity brought in the name of J. J. Powers, Jr., suing for the use and benefit of the State of Alabama: otherwise the State is not a party. He alleges that he is a citizen and taxpayer of Alabama, and sues also on behalf of all other citizens and taxpayers of Alabama.

The suit is directed against the United States Fidelity and Guaranty Company and Maryland Casualty Company because of their contract of suretyship on the official bond of S. H. Blan, as treasurer of Alabama, effective in January 1931. It is then alleged that there was passed an Act of the Legislature, approved January 28, 1927, Gen.Acts 1927, p. 26, which provided for expenses of members of the legislature, not exceeding $4 per day; that under that Act Blan, as treasurer, and after the bond became effective, paid out public State funds to members of the legislature under said Act to the extent of many thousands of dollars, to-wit, $150,000.00, which this suit is brought to recover on the ground that the Act of 1927, supra, was unconstitutional, and has been so declared by this Court. See Hall v. Blan, 227 Ala. 64, 148 So. 601.

The bill then alleges that Bibb Graves is the present Governor of Alabama, and was such when the Act of 1927 was enacted, and was approved by him; and that during

his present term, and after that Act was declared unconstitutional, he approved another act to provide for expenses of the legislature; and that by reason of such official approval, it would be embarrassing for him now as Governor to cause a suit to be instituted to recover the money paid out by authority of the unconstitutional act. And that neither the Governor nor the Attorney General has taken steps to recover it for the State; that Bibb Graves is antagonistic and politically opposed to any effort to collect it; that complainant called said matters to the Governor's and Attorney General's attention, and demanded that steps be taken to recover the money. This was done a few days before the suit was filed. Neither of them responded to his demand. He then explains his hurry upon the ground that the claim will or may soon be barred by the statute of limitations, unless the suit be promptly begun.

S. H. Blan was allowed to intervene through the Attorney General of Alabama, representing him, and demurred to the bill. There was a plea in abatement by the United States Fidelity and Guaranty Company and the Maryland Casualty Company.

The question thus presented is the right of this complainant as a citizen and taxpayer to bring suit to recover this money for the State as a governmental unit, because of the failure of the State authorities to do so.

The argument is made that since the taxpayer may enjoin the payment of State funds when it is proposed to pay them on an unconstitutional act, he has the right, on certain conditions, to recover them after they are paid, or to sue the officer or his bondsmen for the official misconduct of his office in thus paying out the money.

The suit is not to recover the money from those who received it, but for a breach of the bond of the officer for his alleged unlawful act in paying it out under an unconstitutional act of the legislature.

It is thought that section 2612, Code, authorizes such a suit, upon the ground that complainant is a person injured within the terms of that act. It defines such a person as one "having a direct and proximate interest in the official act or omission and all persons connected with such official act or omission, by estate or interest."

■ We do not think the statute was intended to support a taxpayer's suit, which is not to recover his property, but to put money in the public treasury, and thereby indirectly to affect him. Plaintiff in this suit could not handle any of the money if collected. But we have held that it is not by virtue of the protection of a property right which justifies a taxpayer's suit, but it is an emergency remedy to prevent irreparable injury, to be exercised at once to hold a status quo until legal questions are determined. The remedy is permitted by members of a class. Leedy v. Taylor, 231 Ala. 317, 164 So. 820; 58 A.L.R. 598; 4 Dillon Municipal Corporations, section 1579 (914). Many states and the federal courts do not recognize such remedy. Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078; Sears v. James, 47 Or. 50, 82 P. 14. We do not think section 2612, Code, justifies this suit.

The case of Griffin v. Drennen et al., 145 Ala. 128, 40 So. 1016, is cited as authority to sustain the suit. In that case a citizen and taxpayer of Birmingham sought in equity a manadatory injunction requiring the mayor to pay to the city treasury excess in salary collected by him, making the city a party defendant. No question as to the remedy was raised or treated but it was assumed. And such assumption is well supported. It is thus declared in McQuillin on Municipal Corporations, section 2747:

"Taxpayers may bring suit to recover property belonging to the municipality or for any money which has been paid out or released without authority of law, or to enforce any cause of action belonging to the municipality, against the person having the money or property or otherwise liable to suit, subject to these exceptions, namely: (1) either demand must have been made that suit be brought by the public officers of the municipality or it must be alleged and shown that such demand would be unavailing; (2) a taxpayer cannot maintain an equitable action to recover money expended by the officers of a municipality, unless the municipality itself could have maintained such an action in the first place; (3) a taxpayer cannot sue third persons in behalf of the municipality unless the bringing of such action is a duty devolving upon the municipal authorities, as to which they have no discretion and which they have refused to perform; and (4) the action does not lie where it would be grossly inequitable to enforce the claim, or where the basis

thereof is a claim of the taxpayer's rather than that of a municipality. * * *

"So a resident taxpayer may sue its officers who have squandered or dissipated its funds, or paid them out for an unlawful or unauthorized purpose, to recover such funds for the benefit of the municipality, 'where its proper law officer neglects and refuses to prosecute such an action.' "

To like effect is 4 Dillon on Municipal Corporations, section 1588, in which it is emphasized that the municipal corporation should be made a defendant since it is the trustee of the fund sought to be collected. When the collection of city funds is involved, it is said that the principles usually applicable to private corporations apply. 4 Dillon on Municipal Corporations, section 1579 (914).

In neither instance is there any such burden as that the State may not be made a party defendant. Section 14, Constitution; Mitchell v. Stephens, D.C., 285 F. 756.

Decisions of other states are cited which hold that taxpayers may maintain such suits when the state officers charged with the duty to do so are interested or have declined, or are in an antagonistic attitude to the maintenance of such a suit. Malone v. Peay, 157 Tenn. 429, 7 S.W.2d 40; Regan v. Babcock, 188 Minn. 192, 247 N.W. 12. In some of those cases an injunction was sought. In others no such condition existed and in Wertz v. Shane, 216 Iowa 768, 249 N.W. 661, a taxpayer sued the members of the legislature for amounts paid in excess of their constitutional right, on the refusal of the attorney general to do so. The suit was sustained for the reason that the taxpayer could enjoin payment in the first place. Many cogent reasons are assigned in Schneider v. Yellott, 124 Md. 92, 91 A. 779, why such a principle should not apply to state matters to the extent of suing for their recovery (page 780):

"Hence, if the appellee owes the state of Maryland and the plaintiff can sue in his own name for the use of the state, every other taxpayer can do so, and, instead of there being one, there might be many such suits against a public officer, even if eventually he could show there was no merit in them. Such suits might be instituted for the purpose of discrediting the defendant as a candidate for some office at an election to be held by the people, on account of some

personal animosity to him or for other equally unmeritorious cause.

"Again, if a taxpayer has a right to sue, he has the right to control his suit. One might docket a case and then continue it as long as he and the defendant saw proper, unless it could be disposed of under some rule or practice of the court. He might sue for the purpose of inducing the representatives of the state not to sue until his case was determined. But if he could get judgment, who would collect it, who would enter it satisfied, if paid? Is the taxpayer, or the taxpayer's attorney, to be permitted to collect the state's money? If so, the state would have no security for it, other than the personal liability of the one collecting it. The state's attorney, state treasurer, comptroller, and other officers handling the state's funds are required to give bond, but if the theory of the appellant be correct, that might be rendered useless in such cases by having a taxpayer institute the suit."

■ While we have held that a taxpayer's suit to enjoin State officers is available under certain conditions, we do not think that the right to sue in equity to exact payment of a debt due the State is subject to the same principles which sustain a suit for city funds. The State should be a party to such a suit. Section 14, Constitution, prohibits the making of the State a party defendant. No one can use the name of the State as the actor to redress a wrong due it in its governmental capacity except those authorized by the legislature, having exclusive power to legislate. Section 44, Constitution; State v. Butler, 225 Ala. 191, 142 So. 531; Van Dyke v. State, 24 Ala. 81. It can and has conferred this right exclusively upon the Governor (section 5647, Code) and Attorney General (sections 854, 872, Code). Montgomery v. Sparks, 225 Ala. 343, 142 So. 769.

Under existing law, the Governor and Attorney General control the institution and prosecution of all suits for the benefit of the State, and in its name as a governmental unit.

■ The power to legislate carries with it the power to contract and to enforce its contracts. It may shape legislation in respect to contracts subject to section 100, Constitution, and other provisions, without the consent of citizens and taxpayers. It has undertaken to relieve State officers from liability for certain conduct authorized by

·an act subsequently declared unconstitutional. Section 2619, Code. And has sometimes passed local acts to that effect.' The principle has been approved, notwithstanding section 100, Constitution, when the circumstances are such as to justify an appropriation of a like sum. Moses v. Tigner, 232 Ala. 457, 168 So. 194. Moreover, liability to the State is created subject to such limitation because then subject to section 2619, Code.

The legislature has also passed a law that the written opinion of the Attorney General will under some circumstances relieve an officer from liability when he acts upon it, though it turns out to be contrary to a later interpretation made by the judiciary. See sections 853(1) and 868, Code.

A citizen and taxpayer cannot override the legislature in a matter which the Constitution has confided to it. Those conditions illustrate an absence of power by a citizen to enforce contracts due to the State as a unit of government. They are inconsistent with such power.

The members of the Legislature of 1935 did not profit by the Act of 1927, declared to be unconstitutional. They passed another Act (see page 176, Acts 1935), and which was sought to be attacked in the Leedy Case, supra. But they authorized no action to be taken to enforce a liability to the State by reason of the Act of 1927, and the bill does not allege that they were requested to do so, nor that they were interested in not doing so, except only as an incident to the Act of 1935.

■ We do not think, however, that a citizen and taxpayer has the legal and constitutional right to assume the burden· or privilege of enforcing an obligation due to the corporate State, and for its benefit. We think it is contrary to the theory of the powers conferred on the legislature by the Constitution. So that no averment he could make would give equity to his bill. In this connection, we have examined the amendment proposed. It would not obviate the difficulties which we think inhere in the asserted right.

We think the demurrer was properly sustained, and the bill properly dismissed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.