**CLARKE COUNTY COMMISSION,**
Plaintiff,

v.

**PRUET PRODUCTION COMPANY and Exxon Corporation, Defendants.**

**WASHINGTON COUNTY COMMISSION,**
Plaintiff,

v.

**AMOCO PRODUCTION COMPANY, Hughes Eastern Corporation, and Phillips Petroleum Company, Defendants.**

**CHOCTAW COUNTY COMMISSION,**
Plaintiff,

v.

**PRUET PRODUCTION COMPANY, and Vintage Petroleum, Inc., Defendants.**

**MONROE COUNTY COMMISSION,**
Plaintiff,

v.

**TORCH OPERATING COMPANY, INC., Texaco, Inc., and Pruet Production Company, Defendants.**

**ESCAMBIA COUNTY COMMISSION,**
Plaintiff,

v.

**AMERADA HESS CORPORATION, et al., Defendants.**

Civil Action Nos. 96–0578–RV–S, 96–0579–RV–M, 96–0581–RV–C, 96–0582–RV–C, 96–0584–RV–C.

United States District Court,
S.D. Alabama.

March 31, 1997.

William R. Stokes, Jr., Brewton, Rayford L. Etherton, Jr., Etherton Smith, Mobile, Richard L. Coffman, Provost & Umphrey Law Firm, Beaumont, TX, Steven A. Kanner, Much, Shelist, Freed, Denenbert & Ament, Chicago, IL, Steven Greenfogel, Meredith, Cohen & Greenfogel, Philadelphia, PA, J. Michael Fincher, J. Michael Fincher, P.C., Mobile, for plaintiffs.

Alan C. Christian, Mobile, David M. Castro, Houston, TX, for Amerada Hess Corporation.

Halron W. Turner, Edward P. Turner, Jr., David M. Huggins, Chatom, AL, for Amoco Production Co. in No. 96–0579–RV–S, Hughes Eastern Corp. in Nos. 96–0579–RV–S, and 96–0584–RV–S, Bishop Petroleum Inc. in No. 96–0584–RV–S.

Halron W. Turner, Chatom, AL, A. Danner Frazer, Jr., Mobile, AL, Edward P. Turner, Jr., David M. Huggins, Chatom, AL, Richard N. Carrell, Daniel M. McClure, Fulbright & Jaworski, L.L.P., Houston, TX, for Phillips Petroleum in No. 96–0579–RV–S.

Ben H. Harris, Jr., Alan C. Christian, Ben H. Harris, Johnstone, Adams, Bailey, Gordon & Harris, Mobile, AL, for Exxon Corp. in No. 96–0578–RV–S.

W. Alexander Moseley, Mobile, AL, for Fina Oil, Chemical Co. in No. 96–0584–RV–S.

Norton W. Brooker, Jr., Wesley Pipes, Mobile, AL, for IP Petroleum Co., Inc. in No. 96–0584–RV–S.

Edward A. Dean, Duane A. Graham, Mobile, AL, Conrad P. Armbrecht, Armbrecht, Jackson, Demouy, Crowe, Holmes & Reeves, Mobile, AL, for Vintage Petroleum, Inc. in No. 96–0581–RV–S, Mobil Oil Exploration & Producing Southeast, Inc. in No. 96–0584–RV–S.

Duane A. Graham, Mobile, AL, Rae M. Crowe, Armbrecht, Jackson, Demouy, Crowe, Holmes & Reeves, Mobile, AL, for

Murphy Exploration and Production Co., Inc. in No. 96–0584–RV–S.

Duane A. Graham, Mobile, AL, Conrad P. Armbrecht, Rae M. Crowe, Armbrecht, Jackson, Demouy, Crowe, Holmes & Reeves, Mobile, AL, J. Randall Miller, Patricia Dunmire, Bragg, Garder & Wynne, Tulsa, OK, for Oxy USA, Inc. in No. 96–0584–RV–S.

George K. Elbrecht, Monroeville, AL, R. Boyd Miller, Mobile, AL, Patrick H. Sims, Mobile, AL, Hardie B. Kimbrough, Gilmore Law Office, Grove Hill, AL, for Pruet Production Co. in Nos. 96–0578–RV–S, 96–0581–RV–S, 96–0582–RV–S, 96–0584–RV–S.

Edward A. Dean, Duane A. Graham, Conrad P. Armbrecht, Armbrecht, Jackson, Demouy, Crowe, Holmes & Reeves, Mobile, AL, George S. Branch, James W. Boswell, King & Spalding, Atlanta, GA, Charles K. McKnight, Jr., Atlanta, GA, William T. Hankinson, Dallas, TX, for Texaco, Inc. in No. 96–0584–RV–S.

A. Danner Frazer, Jr., Mobile, AL, Gerard G. Pecht, Houston, TX, for Torch Operating Co., Inc. in No. 96–0582–RV–S.

Edward A. Dean, Duane A. Graham, Conrad P. Armbrecht, Armbrecht, Jackson, Demouy, Crowe, Holmes & Reeves, Mobile, AL, Robert E. Plumb, Texaco Inc., New Orleans, LA, George S. Branch, King & Spalding, Atlanta, GA, William T. Hankinson, Thompson & Knight, Dallas, TX, for Texaco Inc. in Nos. 96–0582–RV–C, 96–0584–RV–S.

### ORDER [1]

VOLLMER, District Judge.

Presently before the court is defendants' Rule 12(b)(6) motion to dismiss (Doc. 2 and 4) with a supporting memorandum (Doc. 5). Plaintiff has filed a memorandum in opposition (Doc. 7) that was met in return by a reply memorandum from defendants (Doc. 10).[2] Subsequently, plaintiff filed a response memorandum (Doc. 15). Defendants rounded out the briefing by submitting a "supplemental filing" (Doc. 18) which contains additional legal authority for their position. As explained below, the court finds that defendants' motion to dismiss is due to be granted.

This action was brought by plaintiff Clarke County Commission (hereinafter "County") against defendants Pruet Production Company and Exxon Corporation (hereinafter "producers"). The complaint alleges that the producers have underpaid oil and gas severance taxes to the State of Alabama, thereby reducing the amount of money that Clarke County receives via the state's distribution of severance tax funds pursuant to *Ala.Code* § 40–20–1 *et seq.* (1975). The statute provides that entities, such as the defendants, which take oil or gas out of the ground must pay a percentage of the "value" of the oil or gas to the State of Alabama in the form of a severance tax. "Value" is defined as "[t]he sale price or market value [of the oil or gas] at the mouth of the well". *Ala.Code* § 40–20–1(3) (1975). The County charges that the defendants engaged in various fraudulent schemes with several other oil and gas producers whereby the true value of the oil and gas was disguised such that it appeared, and was reported as, much lower than it actually was. If defendants did underreport the value of the oil and gas, then *ipso facto* the defendants did not pay the state all of the severance tax properly due.

The County asserts three causes of action against the producers: (1) fraud, misrepresentation, and deceit, (2) conversion, and (3) breach of statutory obligations contained in *Ala.Code* §§ 40–20–1 to 40–20–13 (1975).

---

1. The specific references in this Order as to the names of the parties, the briefs and submissions of the parties, and the complaint all pertain to Civil Action No. 96–578–RV–S. However, since the complaints and the issues raised by defendants' Rule 12(b)(6) motions are the same for all five cases, the decision announced in this Order is applicable to all five cases and the parties therein.

2. In its "request to file a response to each defendant's 'reply brief' or, in the alternative, to strike each defendant's reply brief" (Doc. 12), plaintiff contends that the defendants advanced new legal arguments in the reply brief. The court finds this contention without merit. In their original brief in support of the motion to dismiss, defendants set forth an argument that plaintiff lacks cause of action standing. It was plaintiff, not defendants, who later painted this argument as one contesting plaintiff's jurisdictional standing. In their reply brief, defendants were merely responding to plaintiff's erroneous misrepresentation of their motion to dismiss.

The County seeks a money judgment and injunctive relief for itself; it does not seek a judgment directing that due but unpaid severance taxes be paid to the State of Alabama. Similarly, the County only sues on behalf of itself—it does not purport to sue on behalf of the State.[3]

The parties, especially plaintiff, have expended much effort in their briefs on the issue of whether plaintiff has jurisdictional standing to bring this action.[4] When all is said and done, however, the parties are in agreement that plaintiff has jurisdictional standing, satisfying both the constitutional and prudential components thereof. The court finds that plaintiff does in fact have jurisdictional standing. Because of this finding, plaintiff's contention that this action must be remanded if jurisdictional standing was found lacking is rendered a nullity.

■ A complaint shall be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall County Bd. of Education v. Marshall County Gas District,* 992 F.2d 1171, 1174 (11th Cir.1993). The producers' motion to dismiss is due to be granted because a county, according to the specific dictates of the severance tax statute, has no right to enforce the collection or payment of severance taxes via any cause of action. Since the County lacks such authority, it has not stated claims upon which relief can be granted. Therefore, its claims against the producers must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

■ The touchstone of the court's decision is the fact that severance taxes are a statutory creature. Without *Ala.Code* §§ 40–20–1 *et seq.,* there would be no severance tax and no causes of action relating to severance taxes. A party seeking to obtain benefits from the collection of severance taxes is bound, therefore, by the rules of enforcement enacted by the legislators who created the severance tax system.

■ The provisions of the severance tax law make it clear that the Alabama legislature intended only the State of Alabama, through the State Department of Revenue, to have the authority to enforce and oversee the severance tax system. Section 40–20–4(a) states that "[t]he department[5] is hereby authorized and directed to administer and enforce the provisions of this article and to collect all of the taxes levied under the provisions hereof." No other entity, individual or corporate, is given the authority to enforce the collection of severance taxes. And, if it comes to the attention of the State Department of Revenue "that any producer is guilty of violating any of the provisions of this article, the department is ... authorized and required ... to proceed in the courts of the state to obtain a writ of injunction." *Ala. Code* § 40–20–11 (1975). No other entity is given the authority to seek an injunction against an oil or gas producer in relation to severance taxes.[6]

3. In its briefs, the County makes much of the fact that the State of Alabama has not attempted to collect from the producers the allegedly unpaid severance taxes. Because of this failure to act, it argues, the County has a right to proceed with this lawsuit since it is an indirect beneficiary of the state's collection of the taxes. Why the State of Alabama has chosen not to take action against the producers is a matter beyond the competency of the court. Executive decisions as to the enforcement or non-enforcement of laws are political issues and decisions with which the court will not interfere. Suffice it to say that the County will not be permitted to sidestep the normal course of the political process re severance taxes by bringing the judicial branch into the fray.

4. This is attributable in part to the multifarious uses of the word "standing". Standing has been used to refer to several legal principles, among them: jurisdictional standing (which includes constitutional and prudential components), real party in interest, capacity, statutory standing, and cause of action standing. It is cause of action standing, in combination with statutory standing, that is at issue in this case.

   The time spent briefing the matter of jurisdictional standing is also, in all likelihood, attributable in part to an attempt by plaintiff to divert the court's attention to away from the relevant issue.

5. The "department" is the State Department of Revenue. *Ala.Code* § 40–20–1(1).

6. Other sections of the Alabama Code reinforce the fact that only the State Department of Revenue is authorized to collect state taxes and enforce laws governing the same. *See Ala.Code* § 40–2–11 (1975) ("It shall be the duty of the

■ Further, producers failing to pay taxes are liable only to the state, not to individual counties. Specifically, the statute provides that any person who does not deduct and withhold the appropriate amount of tax upon the severance of oil or gas from lands located in Alabama

> shall be liable to the state for the full amount of taxes, interest and penalties due the state; and the [State Department of Revenue] shall proceed to collect the tax from the person in charge of production operations, under the provisions of this article, as if he were the produce of the oil or gas.

*Ala.Code* § 40–20–3(d). There is no provision that exposes producers to liability to the counties, entities which indirectly benefit from the revenue generated by severance taxes.

Recent case law emanating from the Supreme Court of Alabama also supports the conclusion that the County lacks statutory standing to sue for the collection of severance taxes. In *Doremus v. Business Council of Alabama Workers' Compensation Self-Insurers Fund,* 686 So.2d 252 (1996), the Court affirmed the trial court's order which granted the defendants' motion to dismiss. *Doremus* involved a suit by a taxpayer against state officials and self-insurer funds. The taxpayer alleged that the self-insurer funds owed taxes to the state but that the state had failed to collect the taxes. The taxpayer sought for herself and all other members of her putative class monetary relief equal to the amount of taxes in arrears. The Court did not reach the merits of the case; instead, it held that "only the State, through its attorney general or other proper representative, has standing [7] to sue to collect taxes allegedly owed to the State." *Id.*

at 253. In support of its holding, the court cited the Alabama rule of law that "[t]he exclusive power and authority to sue for collection of State taxes lies with the State." [8] *Id.* at 253 (citing *Powers v. United States Fid. & Guar. Co.,* 236 Ala. 389, 182 So. 758 (1938) and *State v. Colonial Refrigerated Transportation, Inc.* 48 Ala.App. 46, 261 So.2d 767 (1971)).

There are other reasons why the County is an improper party to enforce the severance tax laws of the State of Alabama. First, if the County were permitted to proceed with this lawsuit, the producers would be wrongfully denied the taxpayer protections afforded by Alabama's tax laws. Section 40–2A–7(b) of the Alabama Code provides, *inter alia,* that a taxpayer may appeal preliminary tax assessments and that a taxpayer may appeal final tax assessments. If the County were permitted to collect damages from the producers' for underpayment of severance taxes, the producers would be denied their right to have assessments levied against them by the Department of Revenue for underpayment of severance taxes and their corresponding right to appeal such assessments. This would violate the due process protections provided in the Alabama Taxpayers' Bill of Rights, *Ala.Code* § 40–2A–1 *et seq.*

Second, if the County were allowed to proceed with its suit, the producers could be effectively subjected to double taxation for the underpayment of severance taxes. If the County is correct that the producers have underpaid severance taxes, not only might it recover money damages from the producers in this lawsuit but the Alabama Department of Revenue could audit and assess the producers for the same tax deficiencies.

---

Department of Revenue, and it shall have the power and authority ... [t]o have and exercise general and complete supervision and control of the ... assessment of ... and of the collection of ... and of the enforcement of the tax laws of the state...."").

**7.** In *Doremus,* the Alabama Supreme Court used the term "standing" to refer to a person's status as a proper party. It explained as follows:

> Standing, like jurisdiction, is necessary for any valid legal action. To say that a person has

standing is to say that the person is a proper party to bring the action. To be a proper party, the person must have a real, tangible legal interest in the subject matter of the lawsuit.

*Id.* at 253.

**8.** A taxpayer does, however, have standing to bring an action against the state to challenge **expenditures** of state funds. *Doremus,* 686 So.2d at 253. The case at hand does not involve expenditures.

Plaintiff relies heavily on two Alabama cases in support of the proposition that a county can invoke the sovereignty of the state to sue for damages allegedly caused by the producers' fraudulent scheme to underpay severance taxes. The first is *Cassady v. Claiborne*, 590 So.2d 339 (Ala.Civ.App.1991). In that case, plaintiff city taxpayer brought an action against the City of Evergreen and a city council member to recover $500 in municipal funds for the city. The taxpayer alleged that the council member had unlawfully used municipal funds for travel expenses and failed to account for those expenses or have them approved by the city council as required by statute. The statutory provisions in question were *Ala.Code* §§ 36-7-1 through 36-7-5 (1975). The Alabama Court of Civil Appeals relied on three particulars in holding that the city taxpayer had standing[9] to sue so as to avoid a motion to dismiss pursuant to Ala. R. Civ. P. 12(b)(6): (1) under § 36-7-4, the City of Evergreen itself was authorized to bring suit against the council member for the infraction,[10] (2) while the statute did not expressly provide a cause of action for a taxpayer, the court could not ascertain a legislative intention to prevent a taxpayer suit, and (3) case law established that a city taxpayer has the right to bring suit against a councilman to prevent the city from wasting public funds, and the court saw no difference between preventing a city official from wasting municipal funds and forcing a city official to repay money to the city.

None of these particulars presents itself in the case *sub judice*. The severance tax statute does not authorize the County to sue the state. The severance tax statute clearly demonstrates a legislative intent to prohibit suits by counties to recover damages for the underpayment of severance taxes. And, there is no case law establishing that a coun-ty has the right to sue an entity for its failure to pay taxes owed to the state.

The other case relied on by the County is *Montgomery v. Sparks*, 225 Ala. 343, 142 So. 769 (1932). *Montgomery* is also distinguishable from the present action. Defendant Montgomery was the Alabama Superintendent of Banks; plaintiff Sparks was Clay County Tax Collector. Sparks collected taxes for both the county and the state. For many years, Sparks had deposited the state and county taxes he collected into the Farmers' State Bank. For most of that time, the officers of the bank executed to Sparks good and sufficient bonds guaranteeing repayment of the sums deposited. However, for the tax year beginning October 1, 1930, the officers of the bank failed to execute the bond they had promised. In January of 1931, the bank closed and surrendered its assets to Montgomery, the state Superintendent of Banks. The key issue in the case was whether the state and county had liens on the funds of Farmer' State Bank and/or the assets held by the receiver Montgomery. The Court held that the state and county did have liens on the funds and assets. One collateral issue addressed in brief by the Court was whether tax collector Sparks, who had sued on behalf of the state and county,[11] was a proper party. The court held that while not a necessary party, Sparks was not an improper party. *Id.* 142 So. at 771.

The instant action is different from *Montgomery* in the following ways. First, in *Montgomery*, the tax collector was suing not only to recover state money deposited in the bank but also county money deposited in the bank. In the instant action, the County is suing for uncollected taxes owed **only to the state**; no taxes are owed to the County. The county money involved in the *Montgomery* case was money in hand that had been deposited by the county for safe keeping. In the present action, the funds at issue do not

9. In using the word standing, the court was referring to the taxpayer's status as a proper party for bringing the action.

10. This was important because "[i]n order to entitle a taxpayer to bring such an action, it must be shown that the municipality could have maintained the action in the first instance. 64 C.J.S. Municipal Corporations § 2138(b) (1949). Un-der § 36-7-4, Code 1975, the City of Evergreen could maintain an action against [councilman] Claiborne." *Cassady* at 431.

11. The Court noted that "the state and county are the real beneficiaries and actors in this proceeding...." *Id.* 142 So. at 771.

belong to the County—they have not been allocated or distributed to the County. Rather, the funds are a mere expectation.

Second, in *Montgomery* the Alabama Attorney General gave Sparks the authority to sue on behalf of the state for the portion of the deposited funds which belonged to the state. *Id.* 142 So. at 770; *see also State v. Bynum,* 243 Ala. 138, 9 So.2d 134, 144 (1942). In the instant action, the County does not even make the pretense of suing on behalf of the state. The County has set forth claims of conversion, fraud, and breach of statutory obligations in an attempt to recover money damages only for itself.

Third, in *Montgomery* the bank account in question was in the name of Sparks, the tax collector. In the case *sub judice,* the severance taxes are assessed and collected in the name of the State of Alabama, not individual counties. Finally, the *Montgomery* case was about whether the state and a county have a preferred claim to bank assets held by a receiver, not about whether a county can bring an action against a taxpayer for the underpayment of severance taxes owed to the state.

 As a means of summary, the legal conclusions derived from the previous discussion will now be specifically applied to the three causes of action listed in the complaint. The first cause of action is "fraud, misrepresentation, and deceit." It is well-established that "[t]here can be no actionable fraud without a breach of a legal duty owed by the defendant to the plaintiff." *George v. Federal Land Bank of Jackson,* 501 So.2d 432 (Ala.1986). Since the producers do not owe the County any legal duties with regard to severance taxes—such duties are only owed by the producers to the State of Alabama— the County has not stated a claim upon which relief can be granted. The second cause of action is conversion. The County alleges that "[t]he Defendants have wrongfully and intentionally retained severance taxes belonging to the County Commission and have exercised dominion over such monies inconsistent with the rights of the County Commission." Complaint at 12–13. As previously explained, it is only the State of Alabama to whom the producers owe severance taxes;

the severance taxes are not the property of the County. Therefore, because the County has no right to possession of the severance taxes, the County has not stated a claim upon which relief can be granted. The last cause of action is "breach of statutory obligations," namely the producers' obligations set forth in the severance tax provisions, *Ala.Code* §§ 40–20–1 to 40–20–13 (1975). Because these obligations are owed only to the State of Alabama, this claim is also due to be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

For the reasons set forth above, these five actions are hereby **DISMISSED with prejudice** for the County Commissions' failures to state claims upon which relief can be granted.