Chemical Waste Management, Inc. ("ChemWaste"), petitions this Court for a writ of mandamus directing the Montgomery Circuit Court to dismiss the action filed against it by John Nichols. We deny the petition.
ChemWaste operates a hazardous-waste treatment, storage, and disposal facility located in Emelle, Alabama. Since September 30, 1992, the State of Alabama has "levied fees on waste received for disposal to be paid by the operators of each commercial site for the disposal of hazardous waste or hazardous substances."[1] § 22-30B-2(c), Ala. Code 1975. The parties agree that fees totaling $51 per ton are levied "on all hazardous waste . . . received for disposal." § 22-30B-2(c)(1). They further agree that fees totaling $21 per ton are levied "on all other waste . . . at a commercial site for the disposal of hazardous waste and hazardous substances," § 22-30B-2(c)(4), that is, nonhazardous waste.
ChemWaste receives hazardous waste, some of which ChemWaste treats to remove its hazardous characteristics before it disposes of the waste ("decharacterized waste"). For a time, ChemWaste paid the $51-per-ton tax on the decharacterized waste. However, on June 24, 1999, ChemWaste submitted a petition for refund to *Page 1009 
the Alabama Department of Revenue ("the Department"), seeking a revenue ruling as to future waste-disposal fees for decharacterized waste, as well as the refund of fees it alleged it had improperly paid to the Department with regard to the disposal of decharacterized waste.
ChemWaste and the Department resolved the petition for refund. While ChemWaste received no refund for the $51-per-ton tax it had paid on decharacterized waste, the Department and ChemWaste agreed that, after the date of their agreement, the total fees on decharacterized waste would be reduced to $21 per ton, that is, to the nonhazardous-waste rate.
On July 15, 2004, John Nichols, an Alabama taxpayer, sued ChemWaste, the Department, Clayton L. Young, and Nicholas Bailey in the Montgomery Circuit Court. According to Nichols, his lawsuit is "a legal challenge to the decision of the Department of Revenue to reduce a tax, i.e., an abatement, on a certain kind of waste that was received for disposal at the Emelle landfill." Nichols's brief, at 4. The decision Nichols refers to as a tax reduction or abatement is the Department's agreement to accept fees on decharacterized waste at the rate of $21 per ton, instead of the $51-per-ton rate ChemWaste had previously paid on such waste at the Department's insistence.
Count one of Nichols's complaint is brought pursuant to the Declaratory Judgments Act, § 6-6-220 et seq., Ala. Code 1975. In that count, Nichols seeks "only a declaration that the tax abatement was wrongfully granted and is void," Nichols's brief, at 22, and "does not seek to recover funds on behalf of the State." Nichols's brief, at 14 (emphasis added). In counts two and three, Nichols alleges that the Department granted the reduction in fees to ChemWaste as the result of fraud perpetrated by ChemWaste, Young, and Bailey. The complaint alleges that "[t]he tax reduction will deprive the State of Alabama and its taxpayers of millions of dollars in revenues over the life of the landfill. As a result, the State and its taxpayers have been damaged." The fraud counts include demands for compensatory and punitive damages, which, according to Nichols, are "claim[s] for monetary relief on behalf of the State." Nichols's brief, at 23.
In response to Nichols's complaint, ChemWaste filed a motion to dismiss, alleging, in pertinent part, that Nichols has no standing to bring his action. The Department filed an answer and a petition for realignment of the parties. In its answer, the Department stated, in pertinent part:
 "[I]t is respectfully submitted that the dismissal argument by ChemWaste that [Nichols] `has no standing to bring his declaratory judgment action,' if granted by the court, would necessarily be dispositive of the single cause of action asserted in the complaint against the Department. Therefore, if the court should so rule then the Department requests that such a resulting dismissal order should likewise dismiss the complaint as to the declaratory judgment action asserted against the Department."
In its petition for realignment, the Department sought to be realigned as a plaintiff "in the . . . event that the complaint for declaratory judgment is not dismissed as a result of the `lack of standing' dismissal ground asserted by ChemWaste."
On March 11, 2005, the trial court denied ChemWaste's motion to dismiss. Then, on March 24, 2005, the trial court granted the Department's motion to realign it as a plaintiff. On April 15, ChemWaste timely filed its petition for a writ of mandamus. *Page 1010 
Mandamus review is available when the question presented is one of subject-matter jurisdiction.
 "`Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.' Ex parte Integon Corp., 672 So.2d 497, 499
(Ala. 1995). The question of subject-matter jurisdiction is reviewable by a petition for a writ of mandamus. Ex parte Flint Constr. Co., 775 So.2d 805 (Ala. 2000)."
Ex parte Liberty Nat'l Life Ins. Co., 888 So.2d 478, 480 (Ala. 2003) (emphasis added). "When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction." State v. Property at 2018 Rainbow Drive,740 So.2d 1025, 1028 (Ala. 1999). Under such a circumstance, the trial court has "no alternative but to dismiss the action."740 So.2d at 1029.
"To say that a person has standing is to say that that person is a proper party to bring the action. To be a proper party, the person must have a real, tangible legal interest in the subject matter of the lawsuit." Doremus v. Business Council of AlabamaWorkers' Comp. Self-Insurers Fund, 686 So.2d 252, 253 (Ala. 1996). Specifically, "[s]tanding . . . turns on `whether the party has been injured in fact and whether the injury is to alegally protected right.'" Property at 2018 Rainbow Drive,740 So.2d at 1027 (quoting Romer v. Board of County Comm'rs ofthe County of Pueblo, 956 P.2d 566, 581 (Colo. 1998) (Kourlis, J., dissenting)).
This Court has previously addressed the issue of taxpayer standing. See, e.g., Doremus. ChemWaste contends that, "[u]nder the authority of [Doremus], [Nichols] has no standing." Petition for writ of mandamus, at 9. We disagree.
In Beckerle v. Moore, 909 So.2d 185, 188 (Ala. 2005), this Court described Doremus as holding "that a taxpayer did not have standing to sue to collect taxes owed the State." In so holding, the Doremus Court explained:
 "While it is firmly established that an Alabama taxpayer has standing to bring an action against the State challenging expenditures of State funds, Hunt v. Windom, 604 So.2d 395 (Ala. 1992); Zeigler v. Baker, 344 So.2d 761 (Ala. 1977), it is also established that an Alabama taxpayer, such as Doremus, has no standing to bring a lawsuit against the State and another Alabama taxpayer seeking the collection of State taxes allegedly owed by the other taxpayer, even though the State fails to act. The exclusive power and authority to sue for collection of State taxes lies with the State. Powers v. United States Fid. Guar. Co., 236 Ala. 389, 182 So. 758 (1938); State v. Colonial Refrigerated Transportation, Inc., 48 Ala.App. 46, 261 So.2d 767 (1971). In Powers, this Court stated the following regarding a taxpayer's action, brought on behalf of the plaintiff and all other Alabama taxpayers, seeking to collect money allegedly owed to the State by the surety on a bond:
 "`While we have held that a taxpayer's suit to enjoin State officers is available under certain conditions, we do not think that the right to sue in equity to exact payment of a debt due the State is subject to the same principles which sustain a suit for city funds. . . .
"`. . . . *Page 1011 
 "`We do not think, however, that a citizen and taxpayer has the legal and constitutional right to assume the burden or privilege of enforcing an obligation due to the corporate State, and for its benefit.'
 "236 Ala. at 392-93, 182 So. at 761 (emphasis added)."
686 So.2d at 253 (footnotes omitted).
ChemWaste's reliance upon Doremus is misplaced, because "[t]he taxpayer in this case, Nichols, did not bring an action to seek collection of taxes owed by ChemWaste that the [Department] had failed to collect." Nichols's brief, at 11. Indeed, Nichols's complaint is that instead of failing to collect taxes the Department "reduced the tax rate (which was set by the Legislature) the State charged on certain types of wastes received for disposal at Emelle." Nichols's brief, at 12. Therefore, Nichols argues, ChemWaste has been granted an unlawful tax reduction, which he argues should be declared invalid. This declaratory relief is requested in count one of Nichols's complaint. This Court was faced with no such claim in Doremus.
In Henson v. HealthSouth Medical Center, Inc., 891 So.2d 863,868 (Ala. 2004), this Court held "that a taxpayer has standing to challenge a tax abatement conferred upon another taxpayer comparable to the previously recognized standing to challenge the expenditure of public funds so long as the taxpayer can demonstrate a probable increase in his tax burden from the challenged activity." In count one of his complaint, Nichols, citing Henson, alleges that "[a] taxpayer has standing to bring an action alleging that a governmental entity has wrongly granted a tax reduction to another taxpayer and requesting that the tax reduction be declared void." However, in its petition, ChemWaste argues that Nichols's reliance upon Henson is misplaced, stating:
 "There are three reasons why Henson does not apply to this case: (1) Henson created only a narrow exception to Doremus for taxpayers to challenge an improper abatement, and this case does not involve an abatement; (2) this Court has distinguished Henson
from Doremus on the basis that the plaintiff in Henson sought no monetary recovery, while the plaintiff here seeks compensatory and punitive damages; and (3) the [rate reduction] does not in fact cause the taxpayer/plaintiff to pay more taxes, a prerequisite for standing established in Henson."
Petition for writ of mandamus, at 16-17. ChemWaste's arguments are not persuasive.
In Henson, HealthSouth had applied for, and been granted, "a tax abatement pursuant to the Tax Incentive Reform Act of 1992, §40-9B-1 et seq., Ala. Code 1975 (`TIRA')." 891 So.2d at 864. "Abatement" is defined in TIRA as "[a] reduction or elimination of a taxpayer's liability for tax." § 40-9B-3(1). In holding that a taxpayer has standing to challenge a tax abatement conferred upon another taxpayer, the Court noted that "`[f]or the purposes of an analysis of standing, . . . granting of tax abatement doesnot differ significantly from an expenditure of public funds,since in either case the conduct complained of could result inthe treasury's containing less money than it ought to.'"Henson, 891 So.2d at 868 (quoting Sommer v. City of St.Louis, 631 S.W.2d 676, 680 (Mo.Ct.App. 1982)) (emphasis added inHenson).
ChemWaste argues that the Department's decision concerning the tax rate to be applied to decharacterized waste "was not an abatement of taxes otherwise rightfully owed, but rather an interpretation of what was rightfully owed under the statute." *Page 1012 
Petition for writ of mandamus, at 2. Similarly, ChemWaste explains:
 "Simply exempting a taxpayer for what otherwise is legally owed is not what happened in this case. In this case, the Department examined statutory language and determined one tax, rather than another, was legally owed. It was not an abatement, but rather the Department's interpretation of the statute and what was legally owed under that statute."
Petition for writ of mandamus, at 18. Obviously, ChemWaste admits, as it must, the statutory basis of the waste-disposal fees. However, it contends that Nichols has no standing to challenge the Department's current interpretation of the statute as requiring that fees on decharacterized waste be imposed at the rate of $21 per ton, instead of the $51-per-ton rate previously imposed on such waste under the Department's prior interpretation of the same statute.
If the Department's current interpretation and resulting application of the relevant statute are incorrect, then it would appear that the Department will collect less money than it should with regard to ChemWaste's disposal of decharacterized waste. Therefore, the recognition of Nichols's standing to challenge the Department's decision is consistent with, rather than contrary to, the reasoning in Henson. The cause of any decrease in tax revenues is immaterial to an analysis of the standing issue.
ChemWaste argues that "Henson is inapposite[, because] the plaintiff in Henson sought no monetary recovery, while [Nichols] seeks a backdoor recovery of compensatory and punitive damages." ChemWaste's reply brief, at 5-6. However, as previously noted, in count one of his complaint, Nichols seeks "only a declaration that the tax abatement was wrongfully granted and is void." Count one contains no claim for monetary relief.
Also, ChemWaste argues that Nichols "has not pled sufficient facts to demonstrate that the [Department's interpretation of the statute] cause[s] him to pay more taxes, a prerequisite for standing established in Henson." ChemWaste's reply brief, at 6. It is true that, under Henson, "the taxpayer [must] demonstrate a probable increase in his tax burden from the challenged activity." Henson, 891 So.2d at 868. In Nichols's complaint, he alleges:
 "25. As a taxpayer, [Nichols] is liable to replenish the public treasury for the tax reduction that was wrongfully granted to ChemWaste. The tax reduction has resulted in a probable net increase in [Nichols's] taxes since the reduction went into effect."
Nichols's allegations are more specific than the general allegations in Henson's complaint and, thus, are sufficient to withstand ChemWaste's motion to dismiss. See Henson,891 So.2d at 868-69.
Finally, ChemWaste argues that, "[e]ven if [Nichols] somehow has standing to make a declaratory judgment claim . . ., he has no standing to make fraud and conspiracy claims." Petition for writ of mandamus, at 23. According to ChemWaste, "only the Attorney General or other attorneys designated by the State may sue to recover monies owed the State." Id. However, in his brief, Nichols no longer claims to have standing to bring fraud and conspiracy actions on behalf of the State. Instead, Nichols argues that, because he has standing to bring his declaratory-judgment action, and because the Department has been realigned as a plaintiff, "the State . . . will be free to pursue the fraud and conspiracy actions on its own." Nichols's brief, at 28. Thus, Nichols argues, *Page 1013 
the issue of his standing to pursue the tort claims is moot. We agree.
For the foregoing reasons, ChemWaste has failed to show that it has a clear legal right to an order dismissing the action filed against it by Nichols. Therefore, the petition for the writ of mandamus filed by ChemWaste is denied.
PETITION DENIED.
HARWOOD, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
NABERS, C.J., and SEE and LYONS, JJ., dissent.
[1] The parties refer to these fees as taxes, and in this opinion we will use the terms "fees" and "taxes" interchangeably to refer to the amounts required to be paid pursuant to §22-30B-2.