Bruce T. SOMMER, et al.,
Plaintiffs-Appellants,

v.

The CITY OF ST. LOUIS, Missouri, et
al., Defendants-Respondents.

No. 42006.

Missouri Court of Appeals,
Eastern District,
Division One.

March 16, 1982.

Frank Susman, St. Louis, for plaintiffs-appellants.

James J. Wilson, Asst. City Counselor, Edwin S. Fryer, Bruce E. Woodruff, St. Louis, for defendants-respondents.

STEPHAN, Presiding Judge.

This is an appeal from a declaratory judgment concerning a tax abatement ordinance enacted by the City of St. Louis. The trial court found for the City and the recipient of the tax abatement. We remand to the trial court with instructions to dismiss.

The factual background of the case is as follows: In 1958, the City of St. Louis, acting under the existing Land Clearance for Redevelopment Authority Law, § 99.-300 et seq., RSMo Supp.1957, established by ordinance the Mill Creek Valley Project Area. The tract of land that is the subject of this litigation (hereinafter "the tract") was included in the Project Area. The tax-exempt entity Land Clearance for Redevelopment Authority held the tract until 1965, and then conveyed it to the Lindburg Redevelopment Corporation, organized and existing under Chapter 353, RSMo 1959. Section 353.110, RSMo 1959, was in effect at that time.

Section 353.110 provides that land acquired by a redevelopment corporation, e.g., Lindburg, pursuant to Chapter 353 "shall not be subject to assessment or payment of general *ad valorem* taxes" for the first ten years *except* to the extent of the assessed valuation of the land, exclusive of improvements, prior to acquisition. Any improvements made during this ten-year period are exempt from taxation. Section 353.110(1). During a second period, of fifteen years' duration, the redevelopment corporation is subject to property taxes on the tract only to the extent of one-half of the assessed value of the land and improvements. Section 353.110(2).

Prior to trial in this matter, appellants, Bruce Sommer and the Metropolitan New Democratic Coalition (NDC), requested that the City admit that, as a result of the 1965 conveyance from Land Clearance to Lindburg, the tract "became eligible [for] and was granted the partial tax abatement and/or relief referred to and contained in ... § 353.110." Respondent City of St.

Louis adopted the view that, through the 1965 conveyance, the tract "became eligible for partial tax abatement referred to in § 353.110, R.S.Mo. but was not in fact granted any tax abatement or relief in that no improvements were constructed on said property and the assessment was not reduced at any time by reason of said statute from what would have otherwise been the assessed valuation and therefore the full unabated taxes were paid on the property."

Lindburg owned the tract from August, 1965 through March, 1976. During that time Lindburg made no improvements on the property. At the end of March, 1976, Lindburg conveyed the tract to Credit Systems Redevelopment Corporation. Prior to this transfer, in July of 1975, the Board of Aldermen of the City of St. Louis enacted Ordinance No. 57052, which granted the tract the twenty-five year partial tax relief or abatement provided for in § 353.110, as described above.

Appellant Bruce Sommer instituted this action below, alleging Ordinance No. 57052 (the ordinance) to be contrary to the Missouri Constitution, Article X, Section 7, because the 1975 ordinance purported to grant twenty-five year tax relief to a tract of land that, in appellant's view, had already enjoyed tax relief since 1965. Article X, Section 7 of the Missouri Constitution provides, in pertinent part, that ". . . the general assembly . . . may provide . . . relief from taxation . . . for such period or periods of time, not exceeding twenty-five years in any instance. . . ." He maintains that § 353.110 does not authorize what he regards as a "second" grant of tax relief or abatement to the same tract. In the action below, NDC, a "voluntary, unincorporated, political membership association with numerous members who are residents and taxpayers of . . . [the] City of St. Louis," was added as a party-plaintiff against defendant City of St. Louis. Credit Systems intervened as a party-defendant.

Plaintiffs sought a declaratory judgment, praying that the ordinance be declared illegal and unconstitutional. Plaintiffs also sought to enjoin the City from enacting similar ordinances in the future.

Credit Systems challenged plaintiffs' standing to sue in a motion to dismiss, in its answer, and in its motion for judgment at the close of all the evidence. The former motion does not appear to have been expressly ruled upon by the trial court. The trial court overruled the latter motion. In its answer, Credit Systems also alleged that plaintiffs were barred by laches from bringing the action. At trial, Credit Systems introduced evidence tending to show that plaintiff Sommer deliberately waited to bring this action until late October of 1975, by which time Credit Systems had, at considerable expense, begun construction of a new consolidated office on the tract. In the view of Credit Systems, Sommer waited until the company had irrevocably committed its resources to building in the city so that it could not pull out if it lost the tax abatement. After hearing all the evidence in the case the trial court entered the following order, set out here in pertinent part:

"(1) Plaintiffs have failed to sustain their burden of proving the allegations in their First Amended Petition by the greater weight of the credible evidence;

"(2) The acts of defendant, City of St. Louis, . . . in enacting Ordinance No. 57052 and/or in granting tax relief to intervenor, Credit Systems Redevelopment Corporation were not in violation of the Constitution or laws of the State of Missouri;

"(3) Ordinance No. 57052 does not violate the Constitution or laws of the State of Missouri and is a valid and existing ordinance of the City of St. Louis;

"(4) Plaintiffs are not entitled to the injunctive relief prayed for . . . and said relief is hereby expressly denied; . . . ."

On appeal, Sommer and NDC point to two errors. First, they argue that since, in their view, laches is not a proper defense in this type of action, all testimony of Credit Systems should have been excluded since the trial court allowed that testimony for the sole purpose of establishing equitable estoppel or laches. In their second point on appeal, plaintiffs challenge the trial court's

conclusion that the ordinance is legal and constitutional. In response, defendants City of St. Louis and Credit Systems attempt to refute these points, and raise again the issue of plaintiffs' standing to bring the suit.

■ We consider only the issues of plaintiff Sommer's standing and plaintiff NDC's capacity to sue, for these dispose of the case. Standing is an "antecedent to the right to relief" and has been said to be, "in a sense, jurisdictional in limine. . . ." *State ex rel. Schneider v. Stewart*, 575 S.W.2d 904, 909[7] (Mo.App.1978). See also *Spencer's River Roads Bowling Lanes, Inc. v. Unico Management Company*, 615 S.W.2d 121, 124[5] (Mo.App.1981).

In his first amended petition, plaintiff Sommer alleged that the unconstitutionality and illegality of defendant City's acts ". . . damage and injure plaintiff Sommer and the members of plaintiff, Metropolitan New Democratic Coalition, both as residents and taxpayers, and in plaintiff Sommer's elected capacity as Alderman, by interfering with and preventing the faithful performance of his obligations, duties and responsibilities to his constituency." At trial, plaintiff Sommer testified that "as a taxpayer" he had "been at least potentially damaged . . . [b]ecause under the adoption of this ordinance certain amounts of property in the City have been off the tax rolls longer than [they] otherwise would have been." He also testified that "as Alderman I need a Court ruling instructing me as to what is legal for the Board of Aldermen to do in terms of voting."

■ An inquiry into standing presents "the task of deciding whether a particular interest asserted is deserving of judicial protection." Davis, "Standing," *Administrative Law Text* at § 22.04. We begin our inquiry with a brief review of plaintiff Sommer's assertion of an interest in this matter based on his status as an alderman. As an alderman, Sommer has no judicially protectible interest in a determination of the constitutionality of a city ordinance. We find no authority conferring standing to sue on an elected official, as such, in this type of case, and Sommer cites us to none. In his capacity as alderman, he patently sought an advisory opinion, which it is not the function of the courts of this state to provide. See *State ex rel. McNary v. Stussie*, 518 S.W.2d 630, 638 (Mo.banc 1974); *Tietjens v. City of St. Louis*, 359 Mo. 439, 222 S.W.2d 70, 71[1] (1949). Alderman Sommer lacks standing to sue in this case; whether taxpayer Sommer may sue is another question.

■ Where, as here, a plaintiff seeks to establish his standing by virtue of his status as a taxpayer of a governmental unit, he must show some injury and damage to himself in that capacity. *Collins v. Vernon*, 512 S.W.2d 470, 473[2] (Mo.App.1974). The "direct, pecuniary injury" that must be alleged need not be different from that suffered by other taxpayers, *Missourians for Separation of Church and State v. Robertson*, 592 S.W.2d 825, 839–840 (Mo.App.1979), and the injury may be alleged and proved in the form of an "increased tax burden," which the taxpayer claims will result from the governmental acts challenged. *Russell v. Calloway County*, 575 S.W.2d 193, 195[1] (Mo.banc 1978); *Collins*, supra, 473[2].

■ Plaintiff Sommer did not in his petition allege a direct, pecuniary injury in the form of an increased tax burden. Failure to allege such an increase is not, however, necessarily fatal to the establishment of standing to sue as a taxpayer. This court may look beyond the petition "to determine if the ultimate fact of damages arises as a necessary conclusion from facts stated in the petition." *Collins*, 512 S.W.2d at 474[3], cited with approval in *Russell*, 575 S.W.2d at 195–196[1] and in *Moseley v. City of Mountain Grove*, 524 S.W.2d 444, 447[6] (Mo.App.1975). Missouri cases in the area of taxpayer standing nearly all concern the allegation of illegal expenditure of public funds. A taxpayer who alleges that public funds are expended for an illegal or unconstitutional purpose by so doing describes an injury sufficient to maintain a declaratory judgment and injunction against the illicit action. *Missourians for Separation*, 592

S.W.2d at 837[11]. As noted earlier, when a plaintiff alleges only that the government is about to undertake an illegal or unconstitutional act, the court may infer that the act requires an expenditure of public funds to be supplied by taxpayers, and so find that the plaintiff has standing. *Russell*, 575 S.W.2d at 195–196[1]; *Collins*, 512 S.W.2d at 474[3].

■ For the purposes of an analysis of standing, we think that a granting of tax abatement does not differ significantly from an expenditure of public funds, since in either case the conduct complained of could result in the treasury's containing less money than it ought to. Therefore, applying the rule enunciated in *Collins*, supra, when a plaintiff alleges in his petition that a city's tax abatement power has been exercised unconstitutionally, we look to see whether a loss of revenue to the city "arises as a necessary conclusion from facts stated in the petition" in order to determine whether this plaintiff has alleged an injury giving him standing to sue.

The consequences depicted as resulting from passage of the ordinance in evidence elicited by plaintiff Sommer at trial may guide us in determining whether an increased tax burden would *necessarily* result. This evidence does not rescue Sommer's pleadings. As indicated, Mr. Sommer testified that he considered himself "potentially damaged" as a taxpayer and hindered in the performance of his aldermanic duties. On the other hand, defendants offered evidence that Credit Systems would have built its offices in St. Louis County had the City of St. Louis not granted it twenty-five years of tax abatement. Thus, according to defendants, the ordinance resulted in an increase in city earnings tax revenues and personal property tax revenues collected by the City, since without the ordinance Credit Systems would not have brought its wage-earners and personal property to the City.

The record does not show whether the increase in personal property and earnings tax revenues alleged by defendants to have been caused by the ordinance is greater than the abatement in general ad valorem property tax revenues payable by Credit Systems. Nor is there any evidence in the record of the total long-range impact of the ordinance on the City treasury, taking into account what taxes might be collected from Credit Systems after the abatement period expires.

■ We can conclude from the record that a net loss of revenue to the City is a *possible* result of the sort of unconstitutional use of a city's tax abatement power that is alleged here, but we cannot conclude that such a loss is a *necessary* result. Therefore, we must conclude under *Collins*, supra, that plaintiff Sommer has not established his standing to sue as a taxpayer under Missouri law. Plaintiff Sommer did not plead that he was injured as a taxpayer; he did not in his petition allege facts from which the court could infer that an increased tax burden was inevitable; nor did he introduce any evidence at trial tending to prove that the abatement would cause a net loss of revenue to the City.

Plaintiff Sommer in his reply brief suggests that if he has no standing then "no taxpayer could ever question the validity of the ordinance in question ... until such time as the City's finances were in a state that it could no longer function as a municipal corporation." He also argues, ostensibly in the alternative, that if he has no standing, the constitutionality of the ordinance could never be challenged because there is no hypothetical plaintiff who could have standing. Our decision here does not compel either conclusion. In any event, the United States Supreme Court, in addressing a similar question, observed that "[o]ur system of government leaves many crucial decisions to the political processes. The assumption that if a given plaintiff has no standing to sue, no one would have standing, is not a reason to find standing." *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 227, 94 S.Ct. 2925, 2935, 41 L.Ed.2d 706, 722[17] (1974). See also *Americans United for Separation of Church and State v. U. S. Dept. of HEW*, 619 F.2d 252, 267 n. 1 (3rd Cir. 1980) (Rosenn, J., concurring).

Respondents challenge the capacity of plaintiff Metropolitan New Democratic Coalition to bring this suit. As an "unincorporated association," the NDC may sue or be sued only through named members and "only if it appears that the representative parties will fairly and adequately protect the interests of the association and its members." Rule 52.10. It is well established that under Missouri law an unincorporated association "has no legal entity distinct from its membership" and thus has no capacity to sue in its own name. *Morris v. Willis*, 338 S.W.2d 777, 779 (Mo.1960). It was, however, stipulated by the parties that Mr. Sommer is a member of NDC. Such a fact can hardly be regarded as giving NDC access to a judicial forum as contemplated by Rule 52.10; and, indeed, appellants have not made such a contention. But, even if Mr. Sommer were regarded as a representative of NDC, it has been demonstrated that he has no standing to litigate the matter at hand and, therefore, cannot confer on NDC capacity to sue. See *Molumby v. Shapleigh Hardware Company*, 395 S.W.2d 221, 228[12] (Mo.App.1965).

We therefore remand to the trial court with instructions that the judgment be vacated and the cause dismissed.

DOWD and STEWART, JJ., concur.