929 So.2d 1007 (2005)
Ex parte CHEMICAL WASTE MANAGEMENT, INC.
(In re John Nichols
v.
Chemical Waste Management, Inc., et al.).
1041039.
Supreme Court of Alabama.
November 18, 2005.
*1008 James L. Priester, Lorrie L. Hargrove, and James L. Mitchell of Maynard, Cooper & Gale P.C., Birmingham, for petitioner.
J. Doyle Fuller and Susan G. Copeland of Law Office of J. Doyle Fuller, P.C., Montgomery; and William J. Baxley and Joel E. Dillard of Baxley, Dillard, Dauphin, McKnight & Barclift, Birmingham, for respondent.
WOODALL, Justice.
Chemical Waste Management, Inc. ("ChemWaste"), petitions this Court for a writ of mandamus directing the Montgomery Circuit Court to dismiss the action filed against it by John Nichols. We deny the petition.
ChemWaste operates a hazardous-waste treatment, storage, and disposal facility located in Emelle, Alabama. Since September 30, 1992, the State of Alabama has "levied fees on waste received for disposal to be paid by the operators of each commercial site for the disposal of hazardous waste or hazardous substances."[1] § 22-30B-2(c), Ala.Code 1975. The parties agree that fees totaling $51 per ton are levied "on all hazardous waste . . . received for disposal." § 22-30B-2(c)(1). They further agree that fees totaling $21 per ton are levied "on all other waste . . . at a commercial site for the disposal of hazardous waste and hazardous substances," § 22-30B-2(c)(4), that is, nonhazardous waste.
ChemWaste receives hazardous waste, some of which ChemWaste treats to remove its hazardous characteristics before it disposes of the waste ("decharacterized waste"). For a time, ChemWaste paid the $51-per-ton tax on the decharacterized waste. However, on June 24, 1999, ChemWaste submitted a petition for refund to *1009 the Alabama Department of Revenue ("the Department"), seeking a revenue ruling as to future waste-disposal fees for decharacterized waste, as well as the refund of fees it alleged it had improperly paid to the Department with regard to the disposal of decharacterized waste.
ChemWaste and the Department resolved the petition for refund. While ChemWaste received no refund for the $51-per-ton tax it had paid on decharacterized waste, the Department and ChemWaste agreed that, after the date of their agreement, the total fees on decharacterized waste would be reduced to $21 per ton, that is, to the nonhazardous-waste rate.
On July 15, 2004, John Nichols, an Alabama taxpayer, sued ChemWaste, the Department, Clayton L. Young, and Nicholas Bailey in the Montgomery Circuit Court. According to Nichols, his lawsuit is "a legal challenge to the decision of the Department of Revenue to reduce a tax, i.e., an abatement, on a certain kind of waste that was received for disposal at the Emelle landfill." Nichols's brief, at 4. The decision Nichols refers to as a tax reduction or abatement is the Department's agreement to accept fees on decharacterized waste at the rate of $21 per ton, instead of the $51-per-ton rate ChemWaste had previously paid on such waste at the Department's insistence.
Count one of Nichols's complaint is brought pursuant to the Declaratory Judgments Act, § 6-6-220 et seq., Ala. Code 1975. In that count, Nichols seeks "only a declaration that the tax abatement was wrongfully granted and is void," Nichols's brief, at 22, and "does not seek to recover funds on behalf of the State." Nichols's brief, at 14 (emphasis added). In counts two and three, Nichols alleges that the Department granted the reduction in fees to ChemWaste as the result of fraud perpetrated by ChemWaste, Young, and Bailey. The complaint alleges that "[t]he tax reduction will deprive the State of Alabama and its taxpayers of millions of dollars in revenues over the life of the landfill. As a result, the State and its taxpayers have been damaged." The fraud counts include demands for compensatory and punitive damages, which, according to Nichols, are "claim[s] for monetary relief on behalf of the State." Nichols's brief, at 23.
In response to Nichols's complaint, ChemWaste filed a motion to dismiss, alleging, in pertinent part, that Nichols has no standing to bring his action. The Department filed an answer and a petition for realignment of the parties. In its answer, the Department stated, in pertinent part:
"[I]t is respectfully submitted that the dismissal argument by ChemWaste that [Nichols] `has no standing to bring his declaratory judgment action,' if granted by the court, would necessarily be dispositive of the single cause of action asserted in the complaint against the Department. Therefore, if the court should so rule then the Department requests that such a resulting dismissal order should likewise dismiss the complaint as to the declaratory judgment action asserted against the Department."
In its petition for realignment, the Department sought to be realigned as a plaintiff "in the . . . event that the complaint for declaratory judgment is not dismissed as a result of the `lack of standing' dismissal ground asserted by ChemWaste."
On March 11, 2005, the trial court denied ChemWaste's motion to dismiss. Then, on March 24, 2005, the trial court granted the Department's motion to realign it as a plaintiff. On April 15, ChemWaste timely filed its petition for a writ of mandamus.
*1010 Mandamus review is available when the question presented is one of subject-matter jurisdiction.
"`Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.' Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995). The question of subject-matter jurisdiction is reviewable by a petition for a writ of mandamus. Ex parte Flint Constr. Co., 775 So.2d 805 (Ala.2000)."
Ex parte Liberty Nat'l Life Ins. Co., 888 So.2d 478, 480 (Ala.2003)(emphasis added). "When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction." State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999). Under such a circumstance, the trial court has "no alternative but to dismiss the action." 740 So.2d at 1029.
"To say that a person has standing is to say that that person is a proper party to bring the action. To be a proper party, the person must have a real, tangible legal interest in the subject matter of the lawsuit." Doremus v. Business Council of Alabama Workers' Comp. Self-Insurers Fund, 686 So.2d 252, 253 (Ala.1996). Specifically, "[s]tanding . . . turns on `whether the party has been injured in fact and whether the injury is to a legally protected right.'" Property at 2018 Rainbow Drive, 740 So.2d at 1027 (quoting Romer v. Board of County Comm'rs of the County of Pueblo, 956 P.2d 566, 581 (Colo.1998)(Kourlis, J., dissenting)).
This Court has previously addressed the issue of taxpayer standing. See, e.g., Doremus. ChemWaste contends that, "[u]nder the authority of [Doremus], [Nichols] has no standing." Petition for writ of mandamus, at 9. We disagree.
In Beckerle v. Moore, 909 So.2d 185, 188 (Ala.2005), this Court described Doremus as holding "that a taxpayer did not have standing to sue to collect taxes owed the State." In so holding, the Doremus Court explained:
"While it is firmly established that an Alabama taxpayer has standing to bring an action against the State challenging expenditures of State funds, Hunt v. Windom, 604 So.2d 395 (Ala.1992); Zeigler v. Baker, 344 So.2d 761 (Ala. 1977), it is also established that an Alabama taxpayer, such as Doremus, has no standing to bring a lawsuit against the State and another Alabama taxpayer seeking the collection of State taxes allegedly owed by the other taxpayer, even though the State fails to act. The exclusive power and authority to sue for collection of State taxes lies with the State. Powers v. United States Fid. & Guar. Co., 236 Ala. 389, 182 So. 758 (1938); State v. Colonial Refrigerated Transportation, Inc., 48 Ala.App. 46, 261 So.2d 767 (1971). In Powers, this Court stated the following regarding a taxpayer's action, brought on behalf of the plaintiff and all other Alabama taxpayers, seeking to collect money allegedly owed to the State by the surety on a bond:
"`While we have held that a taxpayer's suit to enjoin State officers is available under certain conditions, we do not think that the right to sue in equity to exact payment of a debt due the State is subject to the same principles which sustain a suit for city funds....
"`. . . .

*1011 "`We do not think, however, that a citizen and taxpayer has the legal and constitutional right to assume the burden or privilege of enforcing an obligation due to the corporate State, and for its benefit.'
"236 Ala. at 392-93, 182 So. at 761 (emphasis added)."
686 So.2d at 253 (footnotes omitted).
ChemWaste's reliance upon Doremus is misplaced, because "[t]he taxpayer in this case, Nichols, did not bring an action to seek collection of taxes owed by ChemWaste that the [Department] had failed to collect." Nichols's brief, at 11. Indeed, Nichols's complaint is that instead of failing to collect taxes the Department "reduced the tax rate (which was set by the Legislature) the State charged on certain types of wastes received for disposal at Emelle." Nichols's brief, at 12. Therefore, Nichols argues, ChemWaste has been granted an unlawful tax reduction, which he argues should be declared invalid. This declaratory relief is requested in count one of Nichols's complaint. This Court was faced with no such claim in Doremus.
In Henson v. HealthSouth Medical Center, Inc., 891 So.2d 863, 868 (Ala.2004), this Court held "that a taxpayer has standing to challenge a tax abatement conferred upon another taxpayer comparable to the previously recognized standing to challenge the expenditure of public funds so long as the taxpayer can demonstrate a probable increase in his tax burden from the challenged activity." In count one of his complaint, Nichols, citing Henson, alleges that "[a] taxpayer has standing to bring an action alleging that a governmental entity has wrongly granted a tax reduction to another taxpayer and requesting that the tax reduction be declared void." However, in its petition, ChemWaste argues that Nichols's reliance upon Henson is misplaced, stating:
"There are three reasons why Henson does not apply to this case: (1) Henson created only a narrow exception to Doremus for taxpayers to challenge an improper abatement, and this case does not involve an abatement; (2) this Court has distinguished Henson from Doremus on the basis that the plaintiff in Henson sought no monetary recovery, while the plaintiff here seeks compensatory and punitive damages; and (3) the [rate reduction] does not in fact cause the taxpayer/plaintiff to pay more taxes, a prerequisite for standing established in Henson."
Petition for writ of mandamus, at 16-17. ChemWaste's arguments are not persuasive.
In Henson, HealthSouth had applied for, and been granted, "a tax abatement pursuant to the Tax Incentive Reform Act of 1992, § 40-9B-1 et seq., Ala.Code 1975 (`TIRA')." 891 So.2d at 864. "Abatement" is defined in TIRA as "[a] reduction or elimination of a taxpayer's liability for tax." § 40-9B-3(1). In holding that a taxpayer has standing to challenge a tax abatement conferred upon another taxpayer, the Court noted that "`[f]or the purposes of an analysis of standing, . . . granting of tax abatement does not differ significantly from an expenditure of public funds, since in either case the conduct complained of could result in the treasury's containing less money than it ought to.'" Henson, 891 So.2d at 868 (quoting Sommer v. City of St. Louis, 631 S.W.2d 676, 680 (Mo.Ct.App.1982)) (emphasis added in Henson).
ChemWaste argues that the Department's decision concerning the tax rate to be applied to decharacterized waste "was not an abatement of taxes otherwise rightfully owed, but rather an interpretation of what was rightfully owed under the statute." *1012 Petition for writ of mandamus, at 2. Similarly, ChemWaste explains:
"Simply exempting a taxpayer for what otherwise is legally owed is not what happened in this case. In this case, the Department examined statutory language and determined one tax, rather than another, was legally owed. It was not an abatement, but rather the Department's interpretation of the statute and what was legally owed under that statute."
Petition for writ of mandamus, at 18. Obviously, ChemWaste admits, as it must, the statutory basis of the waste-disposal fees. However, it contends that Nichols has no standing to challenge the Department's current interpretation of the statute as requiring that fees on decharacterized waste be imposed at the rate of $21 per ton, instead of the $51-per-ton rate previously imposed on such waste under the Department's prior interpretation of the same statute.
If the Department's current interpretation and resulting application of the relevant statute are incorrect, then it would appear that the Department will collect less money than it should with regard to ChemWaste's disposal of decharacterized waste. Therefore, the recognition of Nichols's standing to challenge the Department's decision is consistent with, rather than contrary to, the reasoning in Henson. The cause of any decrease in tax revenues is immaterial to an analysis of the standing issue.
ChemWaste argues that "Henson is inapposite[, because] the plaintiff in Henson sought no monetary recovery, while [Nichols] seeks a backdoor recovery of compensatory and punitive damages." ChemWaste's reply brief, at 5-6. However, as previously noted, in count one of his complaint, Nichols seeks "only a declaration that the tax abatement was wrongfully granted and is void." Count one contains no claim for monetary relief.
Also, ChemWaste argues that Nichols "has not pled sufficient facts to demonstrate that the [Department's interpretation of the statute] cause[s] him to pay more taxes, a prerequisite for standing established in Henson." ChemWaste's reply brief, at 6. It is true that, under Henson, "the taxpayer [must] demonstrate a probable increase in his tax burden from the challenged activity." Henson, 891 So.2d at 868. In Nichols's complaint, he alleges:
"25. As a taxpayer, [Nichols] is liable to replenish the public treasury for the tax reduction that was wrongfully granted to ChemWaste. The tax reduction has resulted in a probable net increase in [Nichols's] taxes since the reduction went into effect."
Nichols's allegations are more specific than the general allegations in Henson's complaint and, thus, are sufficient to withstand ChemWaste's motion to dismiss. See Henson, 891 So.2d at 868-69.
Finally, ChemWaste argues that, "[e]ven if [Nichols] somehow has standing to make a declaratory judgment claim . . ., he has no standing to make fraud and conspiracy claims." Petition for writ of mandamus, at 23. According to ChemWaste, "only the Attorney General or other attorneys designated by the State may sue to recover monies owed the State." Id. However, in his brief, Nichols no longer claims to have standing to bring fraud and conspiracy actions on behalf of the State. Instead, Nichols argues that, because he has standing to bring his declaratory-judgment action, and because the Department has been realigned as a plaintiff, "the State ... will be free to pursue the fraud and conspiracy actions on its own." Nichols's brief, at 28. Thus, Nichols argues, *1013 the issue of his standing to pursue the tort claims is moot. We agree.
For the foregoing reasons, ChemWaste has failed to show that it has a clear legal right to an order dismissing the action filed against it by Nichols. Therefore, the petition for the writ of mandamus filed by ChemWaste is denied.
PETITION DENIED.
HARWOOD, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
NABERS, C.J., and SEE and LYONS, JJ., dissent.
SEE, Justice (dissenting).
I respectfully dissent.
Chemical Waste Management, Inc., operates a waste treatment, storage, and disposal facility that handles both hazardous and nonhazardous waste. ChemWaste must pay the State of Alabama a fee on all of the waste it receives for disposal at its facility. The parties agree that those fees are $51 per ton for hazardous waste and $21 per ton for nonhazardous waste.[2] In 1999, ChemWaste petitioned the Alabama Department of Revenue for a refund of fees it had allegedly improperly paid to the Department for the disposal of decharacterized waste,[3] and for a ruling as to future waste-disposal fees for decharacterized waste. The Department and ChemWaste resolved the petition by agreement. Under the agreement, the Department did not refund any of the $51-per-ton fee that ChemWaste had paid on decharacterized waste, but the Department and ChemWaste agreed that decharacterized waste in the future should be subject to the $21-per-ton nonhazardous-waste fee.
John Nichols, an Alabama taxpayer, sued ChemWaste and the Department, challenging the Department's agreement with ChemWaste. Nichols alleged that the Department's decision to impose on ChemWaste a fee of $21 per ton for decharacterized waste instead of the $51-per-ton fee is inconsistent with § 22-30B-2(c), Ala.Code 1975, and thus is void. ChemWaste moved the trial court to dismiss Nichols's complaint on the ground that Nichols lacks standing. The trial court denied ChemWaste's motion. ChemWaste then filed this petition for a writ of mandamus.
In Henson v. HealthSouth Medical Center, Inc., 891 So.2d 863 (Ala.2004), this Court found the following language in Henson's complaint sufficient to withstand a motion to dismiss on the basis of lack of standing:
"`The prosecution of this action by [Henson] and the relief granted by the Court [will] provide[] a substantial profit to the general public, including citizens of Birmingham and Jefferson County.'"
891 So.2d at 868. The Henson Court held: "[A] taxpayer has standing to challenge a tax abatement conferred upon another taxpayer comparable to the previously recognized standing to challenge the expenditure of public funds so long as the taxpayer can demonstrate a probable increase in his tax burden from the challenged activity."[4]Henson, 891 So.2d at *1014 868. Nichols's complaint avers that he has standing because,
"[a]s a taxpayer, [Nichols] is liable to replenish the public treasury for the tax reduction that was wrongfully granted to ChemWaste. The tax reduction has resulted in a probable net increase in [Nichols's] taxes since the reduction went into effect."
ChemWaste's Petition, Appendix 1, Nichols's complaint at paragraph 25. The main opinion concludes that "Nichols's allegations are more specific than the general allegations in Henson's complaint and, thus, are sufficient to withstand ChemWaste's motion to dismiss." 929 So.2d at 1012.
Henson, however, is markedly different from this case. HealthSouth owned and operated several hospitals in Alabama, some of which are located in Birmingham. HealthSouth proposed closing one of its Birmingham hospitals to build a new one in another Birmingham location and applied to the Industrial Development Board of the City of Birmingham for a tax abatement pursuant to the Tax Incentive Reform Act of 1992, § 40-9B-1 et seq., Ala. Code 1975 ("TIRA").[5] The Board granted HealthSouth a tax abatement in the amount of $30,390,000. Henson alleged that the abatement was illegally granted. 891 So.2d at 864-65.
This Court distinguished Henson from Doremus v. Business Council of Alabama Workers' Compensation Self-Insurers Fund, 686 So.2d 252 (Ala.1996). In Doremus, a taxpayer sued the Business Council of Alabama Workers' Compensation Self-Insurers Fund ("BCA Fund"), the attorney general of Alabama, and the commissioner of the Alabama Department of Insurance, alleging that the State had failed to collect a 1% tax on premiums received by the BCA Fund. Doremus claimed that the BCA Fund, as a "domestic insurer," was required under § 27-4-5, Ala.Code 1975, to pay a tax of 1% on all premiums it received prior to January 1, 1995. The Doremus Court held that a taxpayer has no standing to sue the State and another taxpayer to collect taxes owed to the State by the other taxpayer. Doremus, 686 So.2d at 253. Henson distinguishes Doremus, stating:
"Doremus would be persuasive authority if the facts here involved a claim by one taxpayer against another taxpayer as to whom the plaintiff claimed that the taxing authority was refusing to enforce clearly applicable tax laws. Put another way, Henson is not arguing that HealthSouth owes outstanding taxes that the State refuses to collect. Such facts are not present in this case because the tax abatement authorized by TIRA excuses HealthSouth from liability for the taxes abated. Instead, Henson argues that HealthSouth has been granted an unlawful tax abatement and is seeking to have the abatement declared invalid."
891 So.2d at 866. The distinction the Henson Court draws between that case and Doremus is that Henson, in which this Court held that the taxpayer had standing, was an abatement case, whereas Doremus was  like the case before us today  a tax-collection case.
*1015 The distinction between Henson and Doremus is precisely the same distinction that exists between Henson and this case. Like the plaintiffs in Doremus, Nichols is arguing that the State of Alabama is refusing to collect the full amount of tax ChemWaste owes the State. Regardless of how Nichols chooses to characterize his challenge in his complaint, Nichols is essentially arguing that under § 22-30B-2(c), Ala. Code 1975, the Department should collect the higher $51-per-ton fee on ChemWaste's decharacterized waste rather than the $21-per-ton fee the Department has agreed to collect. According to the reasoning in Henson, because Nichols is not truly arguing that ChemWaste was granted an unlawful tax abatement, but is essentially alleging that ChemWaste owes the State taxes the State is refusing to collect, Doremus applies. Henson, 891 So.2d at 866. According to this Court's holding in Doremus, Nichols lacks standing as a taxpayer to sue ChemWaste and the Department to seek the collection of taxes allegedly owed to the State by another taxpayer, ChemWaste. Doremus, 686 So.2d at 253 ("it is ... established that an Alabama taxpayer, such as Doremus, has no standing to bring a lawsuit against the State and another Alabama taxpayer seeking the collection of State taxes allegedly owed by the other taxpayer") (citing Powers v. United States Fid. & Guar. Co., 236 Ala. 389, 182 So. 758 (1938)) (emphasis in Doremus).
Not only does the holding in Henson compel denying Nichols standing, but this Court's precedent concerning general taxpayer standing also precludes granting standing to Nichols. Although federal courts have consistently construed taxpayer standing narrowly and required that a plaintiff show a direct injury in order to establish standing,[6] Alabama has adhered to a broader concept of taxpayer standing.[7] It is well established that an Alabama taxpayer has standing to bring an action against the State challenging expenditures of State funds. Doremus v. Business Council of Alabama Workers' Comp. Self-Insurers Fund, 686 So.2d at 253 (citing Hunt v. Windom, 604 So.2d 395 (Ala.1992); Zeigler v. Baker, 344 So.2d 761 (Ala.1977)). This Court stated in Zeigler: "In a long line of decisions this Court has recognized the right of the taxpayer to challenge, either as unconstitutional or as not conforming to the statute, the expenditure of public funds by county officers. The right of a taxpayer to challenge the unlawful disbursement of state funds likewise is unquestioned." 344 So.2d at 763-64 (citations omitted). However, Nichols is not challenging an expenditure, or disbursement, of State funds; thus, the holding in Zeigler does not apply. Broxton v. Siegelman, *1016 861 So.2d 376, 386 (Ala.2003) ("As we view our caselaw, the requirement for standing in a taxpayer lawsuit is the expenditure of state funds. . . ."). Instead, the general law of standing applies to Nichols: "`To say that a person has standing is to say that that person is a proper party to bring the action. To be a proper party, the person must have a real, tangible legal interest in the subject matter of the lawsuit.'" Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So.2d 1013, 1019 (Ala. 2003) (quoting Doremus, 686 So.2d at 253); Eagerton v. Williams, 433 So.2d 436, 447 (Ala.1983) ("The rule is well settled that to be a proper party plaintiff [who has standing to sue], a person must have an interest in the right to be protected.") (citing Bagley v. City of Mobile, 352 So.2d 1115 (Ala. 1977)).
The majority today substantially expands Alabama's general taxpayer-standing doctrine by giving Nichols standing to bring the action despite the fact that he has no tangible interest in the subject matter of the action. Nichols was not a party to the settlement agreement between the Department and ChemWaste, nor did he otherwise suffer a direct injury as a result of the settlement. The Department assessed ChemWaste's tax liability under § 22-30B-2(c), Ala.Code 1975. The assessment was independent of any consideration of Nichols's tax liability, and Nichols suggests no such connection beyond his own speculation that "[a]s a taxpayer, [Nichols] is liable to replenish the public treasury for the tax reduction that was wrongfully granted to Chem Waste." The main opinion nonetheless holds that in the absence of a direct injury to Nichols and, therefore, in the absence of an actual case or controversy between Nichols and the State, Nichols has standing to sue the Department simply because he, like any other taxpayer, may see an increase in the general tax rates to retain revenues at the level at which they would have been had ChemWaste's tax payment remained at the higher rate. This is an unlikely scenario; it presumes that the legislature routinely raises tax rates to make up every shortfall in revenue from an individual taxpayer. In fact, the legislature may, instead of raising taxes, base future expenditures on actual revenues, and, if necessary, allow proration in the present period to reduce present expenditures to the level of actual present revenue. That a settlement between an individual and the Department will cause a tax increase is, in the present political climate, the rankest speculation. If the bald averment in the complaint that, "[a]s a taxpayer, [Nichols] is liable to replenish the public treasury for the tax reduction that was wrongfully granted to" another taxpayer is sufficient to bestow standing, then this Court has authorized any taxpayer in Alabama to litigate every interpretation of every other taxpayer's tax liability and has put the judiciary squarely in the middle of the executive branch's performance of its constitutional function to execute the laws.
The Alabama Constitution expressly adopts the separation-of-powers principle that is implicit in the Constitution of the United States. Opinion of the Justices No. 380, 892 So.2d 332, 334 n. 1 (Ala.2004). Section 42, Alabama Constitution 1901, states:
"The powers of the government of the State of Alabama shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another."
The Alabama Constitution explicitly prohibits the judiciary from exercising the executive powers. Section 43 states:

*1017 "In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men."
This Court recently said that "`"[g]reat care must be exercised by the courts not to usurp the functions of other departments of government.... No branch of the government is so responsible for the autonomy of the several governmental units and branches as the judiciary."'" Birmingham-Jefferson Civic Ctr. Auth. v. City of Birmingham, 912 So.2d 204, 212 (Ala.2005) (quoting Piggly Wiggly No. 208, Inc. v. Dutton, 601 So.2d 907, 911 (Ala. 1992), quoting in turn Finch v. State, 271 Ala. 499, 503, 124 So.2d 825, 829 (1960)). Thus, just as this Court will declare legislative usurpation of the judicial power violative of the separation-of-powers provision of our Constitution, see Ex parte Jenkins, 723 So.2d 649 (Ala.1998), and will decline to exercise the judicial power when to do so would infringe upon the exercise of the legislative power, see Birmingham-Jefferson Civic Ctr. Auth., 912 So.2d at 212, so this Court must decline to interfere in the exercise of the executive power.
Each branch of government is entrusted with a core power. The core power of the executive branch is the execution of the laws. McInnish v. Riley, 925 So.2d 174 (Ala.2005) (citing Opinion of the Justices No. 380, 892 So.2d at 335). The Department, as part of the executive branch, see Ala.Code 1975, § 40-2-1 et seq., is charged with the execution of the tax laws. Ala.Code 1975, § 40-2-11. The Department has the authority and discretion to implement the applicable statute, § 22-30B-2(c), Ala.Code 1975, and to arrive at a settlement with ChemWaste regarding the rate of the fee charged for different types of waste. In the absence of a direct injury or an actual case or controversy, judicial review of Nichols's complaint is an impermissible intrusion into the functioning of the executive branch.
I would hold that Nichols lacks standing to pursue his claim against ChemWaste and the Department and, consistent with the separation of powers, that this Court lacks jurisdiction to resolve this matter.
For the foregoing reasons, I respectfully dissent.
NABERS, C.J., concurs.
LYONS, Justice (dissenting).
I must respectfully dissent.
I agree with ChemWaste that Henson v. HealthSouth Medical Center, Inc., 891 So.2d 863 (Ala.2004), albeit an action, like the one here, seeking no monetary relief, is nevertheless distinguishable, because we are not in this case dealing with an improper abatement, giving rise to a total escape by the taxpayer from tax liability. Instead, we are confronted with a determination by the taxing authority as to the appropriate liability of ChemWaste under the taxing authority's interpretation of the tax laws, an interpretation Nichols says is inconsistent with the intent of the legislature.
The rule is well settled with respect to the federal tax laws that "[a] taxpayer generally has no standing to challenge the tax liability determination of another taxpayer. Al-Kim, Inc. v. United States, 650 F.2d 944, 947 (9th Cir.1979); Graham v. United States, 243 F.2d 919, 922 (9th Cir. 1957)." Ravetti v. United States, 37 F.3d 1393, 1395 (9th Cir.1994). See also In re *1018 United States Catholic Conference, 885 F.2d 1020, 1028 (2d Cir.1989), rejecting a taxpayer's standing where the taxpayer contended that the Internal Revenue Service had made a decision in conflict with the intent of Congress with respect to the tax liability of another taxpayer, the United States Catholic Conference.
Our precedent is equally hostile to such interference, although thus far the issue has been addressed only in the context of the availability of a claim for money damages. See Doremus v. Business Council of Alabama Workers' Comp. Self-Insurers Fund, 686 So.2d 252 (Ala.1996). I would hold, as a matter of first impression, that the fact that Nichols framed his claim so as to seek only prospective declaratory relief is inconsequential, because such a limitation does not prevent the inappropriate meddling by one taxpayer in the relationship of another taxpayer with the taxing authorities. I would hold that this Court lacks subject-matter jurisdiction, relegating to the ballot box, and not the courthouse, Nichols's discontent with the judgment of the taxing authorities as to the applicability of the tax laws to another taxpayer.
NOTES
[1] The parties refer to these fees as taxes, and in this opinion we will use the terms "fees" and "taxes" interchangeably to refer to the amounts required to be paid pursuant to § 22-30B-2.
[2] The State of Alabama levies the fees pursuant to § 22-30B-2(c), Ala.Code 1975.
[3] Decharacterized waste is hazardous waste that ChemWaste receives and treats so that, at the time of disposal, it is no longer classified as hazardous. ChemWaste's petition, at 2.
[4] The Henson Court cited Sommer v. City of St. Louis, 631 S.W.2d 676 (Mo.Ct.App.1982), for the proposition that a taxpayer has standing where the taxpayer can show that the challenged activity will increase his tax burden. 891 So.2d at 868. However, the court in Sommer did not confer standing on the taxpayer; it found that a net loss of revenue to the City of St. Louis was merely a probable, and not a necessary, result of the challenged activity. Id.
[5] TIRA authorizes "the governing body of a municipality, a county, or a public industrial authority [to] grant abatements of all of the taxes allowed to be abated under Section 40-9B-4 with respect to private use industrial property." § 40-9B-5(a), Ala.Code 1975. Section 40-9B-4, Ala.Code 1975, contains limitations on what taxes may abated.
[6] See Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) ("[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to `show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.'") (quoting Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 99, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979)); and Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 219-20, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974) ("It is an established principle that to entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained, or is immediately in danger of sustaining, a direct injury as the result of that action and it is not sufficient that he has merely a general interest common to all members of the public.").
[7] "We note that the federal courts narrowly construe taxpayer standing to require a distinct injury to the plaintiff, ... but this Court... has recognized a broader concept of taxpayer standing." Knutson v. Bronner, 721 So.2d 678, 680 n. 3 (Ala.1998).