I respectfully dissent.
Chemical Waste Management, Inc., operates a waste treatment, storage, and disposal facility that handles both hazardous and nonhazardous waste. ChemWaste must pay the State of Alabama a fee on all of the waste it receives for disposal at its facility. The parties agree that those fees are $51 per ton for hazardous waste and $21 per ton for nonhazardous waste.[2] In 1999, ChemWaste petitioned the Alabama Department of Revenue for a refund of fees it had allegedly improperly paid to the Department for the disposal of decharacterized waste,[3] and for a ruling as to future waste-disposal fees for decharacterized waste. The Department and ChemWaste resolved the petition by agreement. Under the agreement, the Department did not refund any of the $51-per-ton fee that ChemWaste had paid on decharacterized waste, but the Department and ChemWaste agreed that decharacterized waste in the future should be subject to the $21-per-ton nonhazardous-waste fee.
John Nichols, an Alabama taxpayer, sued ChemWaste and the Department, challenging the Department's agreement with ChemWaste. Nichols alleged that the Department's decision to impose on ChemWaste a fee of $21 per ton for decharacterized waste instead of the $51-per-ton fee is inconsistent with §22-30B-2(c), Ala. Code 1975, and thus is void. ChemWaste moved the trial court to dismiss Nichols's complaint on the ground that Nichols lacks standing. The trial court denied ChemWaste's motion. ChemWaste then filed this petition for a writ of mandamus.
In Henson v. HealthSouth Medical Center, Inc., 891 So.2d 863
(Ala. 2004), this Court found the following language in Henson's complaint sufficient to withstand a motion to dismiss on the basis of lack of standing:
 "`The prosecution of this action by [Henson] and the relief granted by the Court [will] provide a substantial profit to the general public, including citizens of Birmingham and Jefferson County.'"
891 So.2d at 868. The Henson Court held: "[A] taxpayer has standing to challenge a tax abatement conferred upon another taxpayer comparable to the previously recognized standing to challenge the expenditure of public funds so long as the taxpayer can demonstrate a probable increase in his tax burden from the challenged activity."[4] Henson, *Page 1014 891 So.2d at 868. Nichols's complaint avers that he has standing because,
 "[a]s a taxpayer, [Nichols] is liable to replenish the public treasury for the tax reduction that was wrongfully granted to ChemWaste. The tax reduction has resulted in a probable net increase in [Nichols's] taxes since the reduction went into effect."
ChemWaste's Petition, Appendix 1, Nichols's complaint at paragraph 25. The main opinion concludes that "Nichols's allegations are more specific than the general allegations in Henson's complaint and, thus, are sufficient to withstand ChemWaste's motion to dismiss." 929 So.2d at 1012.
Henson, however, is markedly different from this case. HealthSouth owned and operated several hospitals in Alabama, some of which are located in Birmingham. HealthSouth proposed closing one of its Birmingham hospitals to build a new one in another Birmingham location and applied to the Industrial Development Board of the City of Birmingham for a tax abatement pursuant to the Tax Incentive Reform Act of 1992, § 40-9B-1 et seq., Ala. Code 1975 ("TIRA").[5] The Board granted HealthSouth a tax abatement in the amount of $30,390,000. Henson alleged that the abatement was illegally granted. 891 So.2d at 864-65.
This Court distinguished Henson from Doremus v. BusinessCouncil of Alabama Workers' Compensation Self-Insurers Fund,686 So.2d 252 (Ala. 1996). In Doremus, a taxpayer sued the Business Council of Alabama Workers' Compensation Self-Insurers Fund ("BCA Fund"), the attorney general of Alabama, and the commissioner of the Alabama Department of Insurance, alleging that the State had failed to collect a 1% tax on premiums received by the BCA Fund. Doremus claimed that the BCA Fund, as a "domestic insurer," was required under § 27-4-5, Ala. Code 1975, to pay a tax of 1% on all premiums it received prior to January 1, 1995. The Doremus
Court held that a taxpayer has no standing to sue the State and another taxpayer to collect taxes owed to the State by the other taxpayer. Doremus, 686 So.2d at 253. Henson distinguishesDoremus, stating:
 "Doremus would be persuasive authority if the facts here involved a claim by one taxpayer against another taxpayer as to whom the plaintiff claimed that the taxing authority was refusing to enforce clearly applicable tax laws. Put another way, Henson is not arguing that HealthSouth owes outstanding taxes that the State refuses to collect. Such facts are not present in this case because the tax abatement authorized by TIRA excuses HealthSouth from liability for the taxes abated. Instead, Henson argues that HealthSouth has been granted an unlawful tax abatement and is seeking to have the abatement declared invalid."
891 So.2d at 866. The distinction the Henson Court draws between that case and Doremus is that Henson, in which this Court held that the taxpayer had standing, was an abatement case, whereas Doremus was — like the case before us today — a tax-collection case. *Page 1015 
The distinction between Henson and Doremus is precisely the same distinction that exists between Henson and this case. Like the plaintiffs in Doremus, Nichols is arguing that the State of Alabama is refusing to collect the full amount of tax ChemWaste owes the State. Regardless of how Nichols chooses to characterize his challenge in his complaint, Nichols is essentially arguing that under § 22-30B-2(c), Ala. Code 1975, the Department should collect the higher $51-per-ton fee on ChemWaste's decharacterized waste rather than the $21-per-ton fee the Department has agreed to collect. According to the reasoning in Henson, because Nichols is not truly arguing that ChemWaste was granted an unlawful tax abatement, but is essentially alleging that ChemWaste owes the State taxes the State is refusing to collect,Doremus applies. Henson, 891 So.2d at 866. According to this Court's holding in Doremus, Nichols lacks standing as a taxpayer to sue ChemWaste and the Department to seek the collection of taxes allegedly owed to the State by another taxpayer, ChemWaste. Doremus, 686 So.2d at 253 ("it is . . . established that an Alabama taxpayer, such as Doremus, has no standing to bring a lawsuit against the State and another Alabama taxpayer seeking the collection of State taxes allegedly owed by the other taxpayer") (citing Powers v. UnitedStates Fid. Guar. Co., 236 Ala. 389, 182 So. 758 (1938)) (emphasis in Doremus).
Not only does the holding in Henson compel denying Nichols standing, but this Court's precedent concerning general taxpayer standing also precludes granting standing to Nichols. Although federal courts have consistently construed taxpayer standing narrowly and required that a plaintiff show a direct injury in order to establish standing,[6] Alabama has adhered to a broader concept of taxpayer standing.[7] It is well established that an Alabama taxpayer has standing to bring an action against the State challenging expenditures of State funds.Doremus v. Business Council of Alabama Workers' Comp.Self-Insurers Fund, 686 So.2d at 253 (citing Hunt v. Windom,604 So.2d 395 (Ala. 1992); Zeigler v. Baker, 344 So.2d 761
(Ala. 1977)). This Court stated in Zeigler: "In a long line of decisions this Court has recognized the right of the taxpayer to challenge, either as unconstitutional or as not conforming to the statute, the expenditure of public funds by county officers. The right of a taxpayer to challenge the unlawful disbursement ofstate funds likewise is unquestioned." 344 So.2d at 763-64
(citations omitted). However, Nichols is not challenging an expenditure, or disbursement, of State funds; thus, the holding in Zeigler does not apply. Broxton v. Siegelman, *Page 1016 861 So.2d 376, 386 (Ala. 2003) ("As we view our caselaw, the requirement for standing in a taxpayer lawsuit is the expenditure of state funds. . . ."). Instead, the general law of standing applies to Nichols: "`To say that a person has standing is to say that that person is a proper party to bring the action. To be a proper party, the person must have a real, tangible legal interest in the subject matter of the lawsuit.'" Liberty Nat'lLife Ins. Co. v. University of Alabama Health Servs. Found.,P.C., 881 So.2d 1013, 1019 (Ala. 2003) (quoting Doremus,686 So.2d at 253); Eagerton v. Williams, 433 So.2d 436, 447 (Ala. 1983) ("The rule is well settled that to be a proper party plaintiff [who has standing to sue], a person must have an interest in the right to be protected.") (citing Bagley v. Cityof Mobile, 352 So.2d 1115 (Ala. 1977)).
The majority today substantially expands Alabama's general taxpayer-standing doctrine by giving Nichols standing to bring the action despite the fact that he has no tangible interest in the subject matter of the action. Nichols was not a party to the settlement agreement between the Department and ChemWaste, nor did he otherwise suffer a direct injury as a result of the settlement. The Department assessed ChemWaste's tax liability under § 22-30B-2(c), Ala. Code 1975. The assessment was independent of any consideration of Nichols's tax liability, and Nichols suggests no such connection beyond his own speculation that "[a]s a taxpayer, [Nichols] is liable to replenish the public treasury for the tax reduction that was wrongfully granted to Chem Waste." The main opinion nonetheless holds that in the absence of a direct injury to Nichols and, therefore, in the absence of an actual case or controversy between Nichols and the State, Nichols has standing to sue the Department simply because he, like any other taxpayer, may see an increase in the general tax rates to retain revenues at the level at which they would have been had ChemWaste's tax payment remained at the higher rate. This is an unlikely scenario; it presumes that the legislature routinely raises tax rates to make up every shortfall in revenue from an individual taxpayer. In fact, the legislature may, instead of raising taxes, base future expenditures on actual revenues, and, if necessary, allow proration in the present period to reduce present expenditures to the level of actual present revenue. That a settlement between an individual and the Department will cause a tax increase is, in the present political climate, the rankest speculation. If the bald averment in the complaint that, "[a]s a taxpayer, [Nichols] is liable to replenish the public treasury for the tax reduction that was wrongfully granted to" another taxpayer is sufficient to bestow standing, then this Court has authorized any taxpayer in Alabama to litigate every interpretation of every other taxpayer's tax liability and has put the judiciary squarely in the middle of the executive branch's performance of its constitutional function to execute the laws.
The Alabama Constitution expressly adopts the separation-of-powers principle that is implicit in the Constitution of the United States. Opinion of the Justices No.380, 892 So.2d 332, 334 n. 1 (Ala. 2004). Section 42, Alabama Constitution 1901, states:
 "The powers of the government of the State of Alabama shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another."
The Alabama Constitution explicitly prohibits the judiciary from exercising the executive powers. Section 43 states: *Page 1017 
 "In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men."
This Court recently said that "`"[g]reat care must be exercised by the courts not to usurp the functions of other departments of government. . . . No branch of the government is so responsible for the autonomy of the several governmental units and branches as the judiciary."'" Birmingham-Jefferson Civic Ctr. Auth. v.City of Birmingham, 912 So.2d 204, 212 (Ala. 2005) (quotingPiggly Wiggly No. 208, Inc. v. Dutton, 601 So.2d 907, 911 (Ala. 1992), quoting in turn Finch v. State, 271 Ala. 499, 503,124 So.2d 825, 829 (1960)). Thus, just as this Court will declare legislative usurpation of the judicial power violative of the separation-of-powers provision of our Constitution, see Ex parteJenkins, 723 So.2d 649 (Ala. 1998), and will decline to exercise the judicial power when to do so would infringe upon the exercise of the legislative power, see Birmingham-Jefferson Civic Ctr.Auth., 912 So.2d at 212, so this Court must decline to interfere in the exercise of the executive power.
Each branch of government is entrusted with a core power. The core power of the executive branch is the execution of the laws.McInnish v. Riley, 925 So.2d 174 (Ala. 2005) (citing Opinionof the Justices No. 380, 892 So.2d at 335). The Department, as part of the executive branch, see Ala. Code 1975, § 40-2-1 et seq., is charged with the execution of the tax laws. Ala. Code 1975, § 40-2-11. The Department has the authority and discretion to implement the applicable statute, § 22-30B-2(c), Ala. Code 1975, and to arrive at a settlement with ChemWaste regarding the rate of the fee charged for different types of waste. In the absence of a direct injury or an actual case or controversy, judicial review of Nichols's complaint is an impermissible intrusion into the functioning of the executive branch.
I would hold that Nichols lacks standing to pursue his claim against ChemWaste and the Department and, consistent with the separation of powers, that this Court lacks jurisdiction to resolve this matter.
For the foregoing reasons, I respectfully dissent.
NABERS, C.J., concurs.
[2] The State of Alabama levies the fees pursuant to §22-30B-2(c), Ala. Code 1975.
[3] Decharacterized waste is hazardous waste that ChemWaste receives and treats so that, at the time of disposal, it is no longer classified as hazardous. ChemWaste's petition, at 2.
[4] The Henson Court cited Sommer v. City of St. Louis,631 S.W.2d 676 (Mo.Ct.App. 1982), for the proposition that a taxpayer has standing where the taxpayer can show that the challenged activity will increase his tax burden. 891 So.2d at 868. However, the court in Sommer did not confer standing on the taxpayer; it found that a net loss of revenue to the City of St. Louis was merely a probable, and not a necessary, result of the challenged activity. Id.
[5] TIRA authorizes "the governing body of a municipality, a county, or a public industrial authority [to] grant abatements of all of the taxes allowed to be abated under Section 40-9B-4 with respect to private use industrial property." § 40-9B-5(a), Ala. Code 1975. Section 40-9B-4, Ala. Code 1975, contains limitations on what taxes may abated.
[6] See Valley Forge Christian Coll. v. Americans United forSeparation of Church State, Inc., 454 U.S. 464, 472,102 S.Ct. 752, 70 L.Ed.2d 700 (1982) ("[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to `show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.'") (quoting Gladstone Realtors v. Village ofBellwood, 441 U.S. 91, 99, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979)); and Schlesinger v. Reservists Comm. to Stop the War,418 U.S. 208, 219-20, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974) ("It is an established principle that to entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained, or is immediately in danger of sustaining, a direct injury as the result of that action and it is not sufficient that he has merely a general interest common to all members of the public.").
[7] "We note that the federal courts narrowly construe taxpayer standing to require a distinct injury to the plaintiff, . . . but this Court . . . has recognized a broader concept of taxpayer standing." Knutson v. Bronner, 721 So.2d 678, 680 n. 3 (Ala. 1998).